STONE & DOWNER Co. *et al. v.* UNITED STATES (No. 990).[1]

DRESSING OIL DISTILLED FROM GREASE.

The term "fit only" implies that the article to which it applies has no practical commercial fitness for uses other than those designated. The board found that this limited use of the oil of the importation was not shown. There was uncontradicted testimony tending to support the board's finding.

United States Court of Customs Appeals, February 28, 1913.

APPEAL from Board of United States General Appraisers, Abstract 29098 (T. D. 32681).

[Affirmed ]

*Searle & Pillsbury (William E. Waterhouse* of counsel) for appellants.

*William L. Wemple,* Assistant Attorney General *(Charles D. Lawrence* special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The record in this case is somewhat voluminous, owing, among other things, to the fact that the evidence taken in Stone & Downer *v.* United States (1 Ct. Cust. Appls., 513) is therein incorporated, but the issue is a narrow one.

The importation here is known as "Peerless Oil," has a saponifiable content of about 5 per cent, is distilled from wool grease or degras, and is different in no material respects from the oil involved in the case above mentioned. Indeed, as we understand the record, it is essentially the same oil, produced by the same manufacturer and in the same manner. Its saponifiable content, owing to improved means of obtaining the oil, may be a little less, but for the purposes o this case not materially so.

In the first Stone & Downer case the importers claimed free entry under paragraph 568 of the act of 1897; here the same claim is made under paragraph 580 of the act of 1909. For the purposes of the issue the paragraphs are the same.

In each case it was assessed and by the board held dutiable under paragraph 3 of the respective acts, which are also, so far as relates to the issue before us, identical.

The importers' claim is that this Peerless Oil is fit only for stuffing or dressing leather.

In the first Stone & Downer case it was claimed in this court by the importers that the board erred in its finding that the oil was not shown to be fit only for stuffing or dressing leather, but we held that the record did not make a case which justified setting aside that finding; in other words, that it did not appear to come within the rule that findings of fact would not be disturbed unless unsupported by or clearly contrary to the weight of evidence.

---

[1] Reported in T. D. 33266 (24 Treas. Dec., 414).

In the case at bar the Board of General Appraisers, among other things, says:

Protestants have confined their efforts to establishing that the oil is not fitted for wool dressing or rope batching, nor can it be practically used as a lubricant. * * *

The net result of the testimony by protestants' witnesses is practically that the oil is too high priced for wool dressing, rope batching, and as a lubricant. On the other hand, we have the uncontradicted testimony of the witness Orth that it is practically fitted for dressing furs and for use in the making of window shades, as well as being used by oil combiners to mix with lard oils.

There is nothing in the record, we think, to warrant a departure from the conclusions heretofore reached by the board and the Court of Customs Appeals, and the protests are therefore overruled.

This was, in effect, a finding that the importers had failed to show that the Peerless Oil was fit only for stuffing or dressing leather.

In this court the importers contend that this finding was error, and we are asked to reverse the same as within the rule above stated.

The term "fit only" implies that the article to which it applies has no practical commercial fitness for uses other than those designated.

In legal effect the provisions of paragraph 580 cast upon the importers the *onus probandi* of establishing a negative—that is, of showing by competent evidence that the oil has no practical commercial fitness for uses other than those named in the paragraph.

The evidence of Mr. Orth, referred to by the board, was, in substance, as follows, and was not contradicted: He had been in the oil and grease business since 1894 as a member of a firm so engaged, did the buying for his firm, in a way managed the business and had supervision of its sales, came in contact with its customers, and knew the uses to which they put oil sold by the firm to them. Among the oils his firm handled were oils bought abroad, claimed by the manufacturer and dealers to be distilled from wool grease. He was shown and made a physical examination of a sample of the importation. He said that he was familiar with the uses of such oils; that in odor and appearance the sample was similar to oils handled by his firm, which were bought and sold as oils distilled from wool grease, although he did not believe they were a pure distillate.

In testifying as to the purposes for which it was used he assumed it to contain from 2 to 7 per cent saponifiable matter. He had never handled the Peerless Oil, but testified that oils "pretty nearly identical" therewith, of 3 to 6 per cent saponifiable content, were sold by his firm, not only to the leather and fur trades for dressing leather and furs, but also to oil combiners for mixing with lard oil for screw-cutting purposes and to window-shade manufacturers for use in the manufacture of window shades, to all of which uses he thought the oil was adapted.

In his able brief the importers' counsel characterizes this testimony as to the use of the oil for window shades as too fragmentary and flimsy to deserve attention.

We can not agree with this contention. It has a legitimate tendency to show that the importation was fit for such a use and that

such use was not temporary or experimental. It therefore not only tends to support the finding of the board, but, being wholly uncontradicted, we think sufficiently supports the same.

Under the rule that the importers must negative the fitness of the Peerless Oil for purposes other than those mentioned in the paragraph, they should have met this testimony with rebutting evidence, which they do not claim to have done. The record rather indicates that the importers' efforts were directed toward showing that the Peerless Oil was unfitted for wool dressing, rope batching, or as a lubricant, and as to those uses a strong case was made, based mainly upon the proposition that its saponifiable content was too low, or its fatty content too high, or its cost too great for those uses, but as to its use in the manufacture of window shades the case stands or falls on the testimony of Mr. Orth.

We think it can not be said that the finding of the board is wholly unsupported by or contrary to the weight of the evidence, and therefore the judgment of the Board of General Appraisers is *affirmed*.