United States v. Schrock & Squires (No. 1374).    United States v. Richard & Co. *et al.* (No. 1375).[1]

COMBINATION OF OILS.

As to this merchandise, one of its constituents, petroleum, is an oil, but the other constituent differs physically, chemically, and commercially from the vegetable oil out of which it is made. It has become a sulphonated saponification of the original vegetable oil and a dissolution of petroleum in this does not constitute a combination of oils. It is a nonenumerated manufactured article and was dutiable as such at 20 per cent under paragraph 480, tariff act of 1909.

United States Court of Customs Appeals, November 27, 1914.

APPEAL from Board of United States General Appraisers, Abstract 34756 (T. D. 34186) and Abstract 35155 (T. D. 34307).

[Affirmed.]

*Bert Hanson*, Assistant Attorney General (*Leland N. Wood*, special attorney, of counsel; *Charles D. Lawrence*, special attorney, on the brief), for the United States. *Comstock & Washburn*, for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

---

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case was invoiced as "lubricating oil" and was imported under the tariff act of August 5, 1909.

The appraiser reported the article to be a "combination of oils," dutiable as such at the rate of 25 per cent ad valorem under paragraph 3 of the act. This rate of duty was accordingly assessed by the collector.

The importers protested against the assessment, claiming duty upon the merchandise as a nonenumerated manufactured article at the rate of 20 per cent ad valorem under paragraph 480 of the act.

The protest was submitted upon evidence to the Board of General Appraisers and was sustained. From that decision the Government now appeals.

The paragraphs which are thus called into question read as follows:

3. Alkalies, alkaloids, distilled oils, essential oils, expressed oils, rendered oils, and all combinations of the foregoing, and all chemical compounds, mixtures and salts, and all greases, not specially provided for in this section, twenty-five per centum ad valorem; chemical compounds, mixtures and salts containing alcohol or in the preparation of which alcohol is used, and not specially provided for in this section, fifty-five cents per pound, but in no case shall any of the foregoing pay less than twenty-five per centum ad valorem.

480. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this section, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of twenty per centum ad valorem.

The first question, therefore, is whether the article at bar is a "combination" of oils within the terms of paragraph 3, *supra*. The testimony upon this subject seems to be free from substantial contradictions; therefore the facts may be stated with confidence.

The article in question is a dark-colored oily liquid which is used only in machine shops. It serves there as a lubricant for metal-cutting tools when operated in lathes to keep them from burning and spoiling the metal upon which they are acting. The liquid is a combination composed of two constituents. The first of these is simple petroleum, which constitutes about 80 per cent of its bulk and about 75 per cent of its value. The other constituent substance is a so-called "transformed" vegetable oil. The testimony does not disclose the identity of the vegetable oil in question, but the process of "transformation" which it undergoes prior to its combination with the petroleum is described with sufficient certainty. According to the testimony the vegetable oil in question is first sulphonated—that is, it is treated with sulphuric acid whereby a chemical change is produced, the hydrogen of the fatty acid being replaced by the radical of the sulphuric acid. The resulting product is then saponified, whereby further changes of form and substance take place This final product, a sulphonated saponification of the original veg-

etable oil, is thereupon mixed with the petroleum in about the proportions above stated. This combination is the article now in question.

A chemical analysis of the present article discloses the presence also of some resin or resin oil, and the testimony does not specifically explain the origin of this. However, it may fairly be inferred that the resinous content existed in the constituent vegetable oil and was released in the process of sulphonation or saponification.

The foregoing facts seem to negative the claim that the present article should be classified as a "combination of oils." One of its constituents, petroleum, is undoubtedly an oil. The other constituent begins its relevant history as an oil, but it loses its character as such before it enters into combination with the petroleum. The substance which actually enters.into that combination differs physically, chemically, and commercially from the vegetable oil from which it had its origin, and can no longer be classed as an oil of any kind.

The following extract from the testimony of N. J. Lane, the Government's chemist, supports the foregoing statement:

Q. Doctor, did you determine the character of the merchandise?—A. I did.

Q. What was it?—A. It was a sulphonated saponification of petroleum and other oils.

Q. How were they united or combined?—A. The petroleum is dissolved in a solution of soap made from sulphonated oil.

\* \* \* \* \* \* \* \*

Q. You determined that it was a sulphonated saponification of oil and petroleum; is that right?—A. Yes; that is all.

It seems fair to conclude that "a solution of soap made from sulphonated oil" is not itself an oil, and that the dissolving of petroleum in such a material does not constitute a combination of oils within the purview of paragraph 3 in question.

This conclusion is not in conflict with the decision in the case of Stone v. United States (4 Ct. Cust. Appls., 47; T. D. 33266), for the oil involved in that case had not been sulphonated or saponified before its importation, although one of the questions incidentally raised in the case related to its saponifiable content. It need hardly be said that the issue presented in that case had nothing at all in common with the present question.

The present article, therefore, is a nonenumerated manufactured article, and is composed of several materials of which petroleum is the component material of chief value. Under paragraph 639 of the tariff act of 1909 petroleum was placed upon the free list. This fact brings into application the rule enunciated in the following terms by the Supreme Court in the case of Hartranft v. Sheppard (125 U. S., 337):

Quilts are nonenumerated manufactured articles composed of two or more materials. Eider down is on the free list. As eider down is the component material of

chief value in the quilts involved in this suit, and that is free, it follows that they are manufactured articles not provided for, and therefore chargeable with the duty of twenty per cent ad valorem under section 2513, rather than thirty-five per cent as a manufacture of cotton, or fifty per cent as a manufacture of which silk is the component material of chief value.

This rule, under the facts above stated, requires the assessment of the present importation at the rate of 20 per cent ad valorem as a nonenumerated manufactured article under the provisions of paragraph 480 of the act. See also Strakosh *v.* United States (1 Ct. Cust. Appls., 360, 361; T. D. 31453).

Merchandise identical in character with the present article was before the board and the court in the following cases, viz, in the Strakosh case, Abstract 21483 (T. D. 29877), where its assessment as "alizarin assistant" under the tariff act of 1897 was held by the board to be erroneous, but where no relief was due the protestants because of the want of a proper protest and record; in the Strakosh case, Abstract 28570 (T. D. 32560), where its assessment as "alizarin assistant" under the tariff act of 1897 was reversed by the board, and it was held to be dutiable as a nonenumerated manufactured article; in the Richard & Co. case, Abstract 31033 (T. D. 33088), where the decision next foregoing was approved and followed under the tariff act of 1909; and in the case of Strakosh *v.* United States (1 Ct. Cust. Appls., 360; T. D. 31453), where an assessment of the article as "alizarin assistant" under the tariff act of 1909 was in question, but was not decided upon the merits because of the fact that no proof appeared in the record in support of the importers' claim that petroleum was the component material of chief value in the article.

It therefore appears that the issues presented in the foregoing cases were not identical with that now before the court, nevertheless the conclusions therein announced were entirely consistent with that reached in the present case.

In accordance with the views above expressed the decision of the board is *affirmed*.