KUBIE & Co. *v.* UNITED STATES (No. 2395).[1]

1. CONSTRUCTION, PARAGRAPH 499, TARIFF ACT OF 1913—"SUBSTANCES USED ONLY FOR MANURE."
   The provision of free list paragraph 499, tariff act of 1913, for "substances used only for manure" means commercial practical use, and does not exclude substances which may be used also for other purposes, but only at prohibitive expense. Tankage of such character was entitled to classification under this paragraph, and should not have been classified under paragraph 385 as a nonenumerated manufacture.

2. EVIDENCE, WEIGHT, AND SUFFICIENCY—PROVING NEGATIVE.
   Testimony by dealers in the commodity at bar that it was fit, practically and commercially, for no other use than as manure, and that, so far as they knew, it was not used otherwise, makes a prima facie case, since, to reject it because there might be other uses, would be to impose a burden impossible to sustain.

United States Court of Customs Appeals, February 4, 1925

APPEAL from Board of United States General Appraisers, Abstract 46942

[Reversed.]

*Barnes, Wilson & Halstead* (*Frank M. Halstead* of counsel) for appellants.
*William W. Hoppin,* Assistant Attorney General (*Marcus Higginbotham,* special attorney, of counsel), for the United States.

[Oral argument Nov. 17, 1924, by Mr. Halstead and Mr. Hoppin]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

Tankage, that is to say, the product remaining after extracting certain substances from slaughterhouse refuse, was classified by the collector of customs at the port of New York as a nonenumerated manufactured article and assessed for duty at 15 per cent ad valorem under that part of paragraph 385 of the tariff act of 1913 which reads as follows:

PAR. 385. That there shall be levied, collected and paid * * * on all articles manufactured, in whole or in part, not provided for in this section, a duty of 15 per centum ad valorem.

---

[1] T. D. 40668.

The importers protested that the merchandise was not a non-enumerated manufactured article and claimed that it was either free of duty under paragraph 499 of the tariff act of 1913 or dutiable as a nonenumerated unmanufactured article under paragraph 385. The provisions upon which the importer relies in so far as pertinent are as follows:

PAR. 385. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for in this section, a duty of 10 per centum ad valorem.

FREE LIST

That on and after the day following the passage of this act * * * the articles mentioned in the following paragraphs shall * * * be exempted from duty.

PAR. 499. Guano, manures, and all substances used only for manure, * * *

The Board of General Appraisers overruled the protest and the importers appealed.

On the hearing before the board the testimony on behalf of the importers was to the effect that the merchandise came from slaughterhouses in Cuba; that such tankage contained bones, dried blood, sinews, and things of that sort and was ground after it was swept up; that the witnesses had dealt in such merchandise for a period of from two to ten years; that is was sold for fertilizer purposes only and that so far as they knew it was used for no other purpose; that it was low in protein and contained fiber and other substances which precluded its use for any purpose other than that of a fertilizer; that it could be cleaned and steamed at a very great expense and used for hog feed and chicken feed, but that that grade of tankage was never used for feed; that the importation had not been analyzed by the witnesses, but that that grade of tankage had been analyzed 20 times and that the witnesses knew what it contained because of the fact that they had handled it for many years; that the merchandise imported was not sold to actual farmers, but to manufacturers of fertilizers who manufactured from it the fertilizer which was sold to the farmer; that it could be used in its imported condition as a fertilizer, but that it might burn the crop; that manufacturers of fertilizer mix it with nitric soda, potash, ammonia, and other things in order to make up the different fertilizer mixtures required by the farmer for the production of various kinds of crops; that witnesses had handled and dealt in such merchandise for a long time and knew of no one who used it to make mixed feed.

No evidence was offered on the part of the Government and the testimony introduced by the importer was left to stand unimpeached and uncontradicted. The contention of the Government that there was no competent evidence showing or tending to show that the tank-

age imported could not be used as animal feed or that it was fit only for fertilizer or fertilizer purposes can not be sustained.

The witnesses for the importer handled and dealt in such tankage for many years and it·had been analyzed·many times.   On the basis of that experience and the analyses made they testified positively that it was fit for fertilizer purposes only and that the expense and loss of material would make it impractical to convert such tankage into feed for animals.   The term "fit only" when applied by statute to an article of commerce, means that such article has no practical commercial use other than that designated in the statute.—Stone & Downer Co. *v.* United States (4 Ct. Cust. Appls. 47, 48; T. D. 33266); Magone *v.* Heller (150 U. S. 70, 71, 75).

Merchants purchase and importers import goods for sale and their testimony as to the known uses and consumers of the commodities in which they deal, coupled with the statement that they know of no other uses and no other consumers, is competent testimony and has a probative value which entitles it to be weighed as evidence.—Klipstein *v.* United States (1 Ct. Cust. Appls. 122; T. D. 31120).   Whether a witness was a farmer, a dealer in fertilizers, or a manufacturer of fertilizer, he could testify only to such uses of tankage as were within his knowledge and to reject such evidence because there *might* be other known uses for the merchandise, would impose on the protestants an evidential requirement which could not possibly be met.

The testimony submitted by the ·importers shifted to the Government the burden of proceeding and if the importation was used for other than fertilizer purposes, it was the duty of the Government to introduce evidence to that effect.   The Government having failed to assume that burden and having elected to leave the classification of the collector entirely unsupported, we must hold that the importer has made out a prima facie case, and that the merchandise is free of duty under paragraph 499 of the act of 1913.

The judgment of the Board of General Appraisers is *reversed.*