(C. D. 1226)

WYPENN OIL COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 28, 1950)

*Lawrence, Tuttle & Harper (Walter I. Carpeneti* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General *(Joseph E. Weil* and *Richard F. Weeks,* special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

JOHNSON, Judge: The merchandise in question is a byproduct derived from the residue resulting from the removal of free fatty acids from herring oil. The collector assessed duty thereon at the rate of 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930. The merchandise imported was crude herring oil, which was placed in a class 6 manufacturing warehouse at the port of Tacoma, Wash., where it was processed by subjecting it to a chemical reaction with caustic soda. The result of such processing was the production of a refined herring oil which was exported. The residue of such process is the product entered for consumption. The plaintiff claims

that the product is properly dutiable as a waste at the rate of 7½ per centum under paragraph 1555, as amended by the Canadian Trade Agreement, T. D. 49752, or at the rate of 10 per centum ad valorem under paragraph 1558 as an unenumerated, unmanufactured article.

The collector of customs also assessed an internal revenue tax under the provisions of section 2491 (a) and (c) of the Internal Revenue Code, and T. D. 50956, the Icelandic Trade Agreement, at the rate of 3 cents per pound upon the basis of the weight of the entire contents of the merchandise covered by protest 116725–K. Upon the merchandise covered by protest 128170–K, the excise taxes were assessed on the fish oil content at the rate of 1½ cents per pound and on the free fatty acid content at the rate of 3 cents per pound. The plaintiff claims that the assessment made upon the merchandise covered by protest 128170–K upon the basis of the content of the fish oil at 1½ cents and the free fatty acid content at the rate of 3 cents is the correct method of assessment.

At the trial the superintendent of the Wypenn Oil Company, Inc., testified that he was a chemist and that the oil was brought into the warehouse, there being refined under his direction. The process used was described by the witness in detail. It consisted of the use of the alkali-refining methods. This process of refinement was effected by the addition of caustic soda and water to the oil and heating it in a refining kettle. After completion of the process, a "homogeneous mass" is withdrawn from the bottom of the kettle, consisting of free fatty acids, water, and caustic soda. The term of description for the substance is "soap stock." The refined oil, free from fatty acids, remains in the kettle. As to the residue, the caustic soda therein forms the fat and the water into an emulsion, which is soluble and contains over 50 per centum oil and free fatty acids. This soap stock is further processed by adding thereto sulphuric acid, which frees the oily part from the water. The fat then rises to the surface and is withdrawn, while the freed water and sodium sulphate, a combination of water and sulphuric acid, is drained into the sewer. The fat that rises to the surface of the mixture is the product at issue here. It is required, in order to be of commercial use, to pass through further elaborate refining processes.

The deputy collector at Seattle testified on behalf of the plaintiff that the merchandise covered by protest 116725–K was assessed at the 3-cent rate upon the quantity of the free fatty acids and the fish oil in the merchandise, and that as to protest 128170–K, the merchandise was assessed at 1½ cents per pound upon the fish oil content and at the rate of 3 cents per pound on the free fatty acid content.

The plaintiff claims that the merchandise at issue is properly dutiable as a waste; that one of the reasons that the soap stock was treated with sulphuric acid was that under the laws of the State of Washington

the material could not be disposed of by dumping into the waters of the State since the residuous mass was water-soluble and the fat traps would not stop such a soluble oil from polluting the streams. For such reason, it is contended that the merchandise is distinguished from the case of *United States* v. *McLaughlin & Freeman*, 35 C. C. P. A. 34, C. A. D. 368, relative to peanut acid oil because there the acid oil was sought for, while here it was required to separate the sludge from the oil so as to prevent violation of the pollution laws of the State. The plaintiff further claims that the product is a waste because it is an unsought residue from the refining of crude herring oil; that the fatty acid and oil have little commercial value and must be extensively processed in order to make it merchantable.

The Government concedes that the excise taxes taken upon the basis of the 3-cent rate per pound were erroneously assessed and that the taxes upon the oil and upon the fatty acid content should have been separately computed. However, as to the claim that the merchandise is a waste, the Government contends that the product before the court is on all fours with the peanut acid oil passed upon by the Court of Customs and Patent Appeals in the case of *United States* v. *McLaughlin & Freeman, supra.*

In the *McLaughlin & Freeman* case, *supra*, the peanut acid oil was obtained by the neutralization of crude peanut oil. The court pointed out that as a result of the process two products were produced from the crude peanut oil and waste materials, first, the refined peanut oil, and second, the "foots" or "sludge" which consisted of sodium salts of fatty acids; that the "foots" or "sludge" was known as "peanut oil soap stock" and was used commercially as a raw material in the manufacture of soap; that in order to obtain the imported product there in question, the "foots" or "sludge" was treated with sulphuric acid; that by subjecting the "foots" or "sludge" to such chemical process, the sodium salts of the fatty acids contained therein were converted into the peanut acid oil, and a waste material which was discarded, and that such chemical process was a manufacture.

In the *McLaughlin & Freeman* case, *supra*, it was claimed, but not relied upon, that the merchandise was a waste. However, it is also apparent that the waste product, to wit, the "foots" or "sludge," was manufactured into the peanut acid oil. It has been held that a chemical change denotes a manufacture. See *In re Alden*, T. D. 15317, G. A. 2751; *Tower* v. *United States*, Abstract 39608; *United States* v. *Schrock & Squires*, 5 Ct. Cust. Appls. 444, T. D. 34974; *Standard Varnish Works* v. *United States*, 59 Fed. 456; and *Murray & Co.* v. *United States*, 7 Cust. Ct. 160, C. D. 560. It is the opinion of this court that the foregoing case is precisely in point in the controversy at issue. Here, the sulphuric acid was added in order that the merchandise could be produced. It is entirely immaterial whether

or not the laws of the State of Washington prohibited the pollution of the waterways and that because of such laws the chemical change which produced the merchandise was necessary. The question before the court is whether or not it is a waste. Under the ruling in the *McLaughlin & Freeman* case, *supra*, it is a manufactured product, produced through a chemical reaction from a waste material. The claim of plaintiff that the merchandise is a waste is therefore overruled.

Inasmuch as the Government concedes that the internal revenue taxes should be collected upon the basis of weight of the fish oil content at the rate of 1½ cents per pound and that the rate of 3 cents per pound was applicable only to the fatty acid content, judgment for the plaintiff will be entered to that extent. In all other respects the protests are overruled.