(C. D. 1229)

ARCHER-DANIELS-MIDLAND COMPANY v. UNITED STATES

United States Customs Court, Third Division

(Decided April 4, 1950)

*Welles, Kelsey, Fuller, Cobourn & Harrington* (*Edwin L. Mitchell* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Howard L. Harawitz,* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

JOHNSON, Judge: The merchandise at issue in this case was invoiced as consisting of "Linseed Oil Foots (Derived from the Alkali Refining of Linseed Oil)." As it was found to contain large percentages of free fatty acids, it was assessed for duty at 20 per centum ad valorem under the provisions of paragraph 1558 as a nonenumerated manufactured article, not specially provided for. An internal revenue tax was also assessed by the collector under the provisions of section 2491 (b) and (c) of the Internal Revenue Code, at 4½ cents a pound on the free fatty acids and salts of fatty acids.

The plaintiff claims that the merchandise is merely acidulated linseed oil soap stock and as such is a waste properly dutiable at 7½ per centum ad valorem under paragraph 1555, as amended by the Canadian Trade Agreement, T. D. 49752.

M. L. Eddy, a chemist employed by the plaintiff, testified that he sampled the shipment at the same time as the Government sampler; that after receipt at the port of Toledo it was stored in a tank which contained some acidulated soap stock; that an attempt was made to process it by applying heat and blowing air through it, which would increase the viscosity of the oil; and that the process was not carried

to completion because of the formation of gelatinous material in the oil.

The witness further testified that thereafter the odor of the material was putrid and it was shipped from the Toledo plant; that a sample of the material mixed with the acidulated soap stock which was in the storage tank was sent to the superintendent of the refineries. A sample of the imported material was admitted in evidence as exhibit 1 and a sample of the ordinary acidulated soap stock was admitted as illustrative exhibit A. The witness did not recall ever having seen another sample similar to exhibit 1. A typical sample of raw linseed oil was marked in evidence as illustrative exhibit B. A sample of refined linseed oil was marked in evidence as illustrative exhibit C. A sample of free fatty acids was marked in evidence as illustrative exhibit D, and a sample of soap produced by the interaction of linseed fatty acids and sodium hydroxide, and known as salts of fatty acids, was marked in evidence as illustrative exhibit E.

The witness further testified that he did not know what process had been applied to the imported merchandise in Canada before exportation; that similar merchandise had not been previously imported; that acidulated soap stock has a slightly acrid odor, but the imported product was putrid in odor.

A chemist employed by the plaintiff, specially trained in oils and fats, who had been with the company for 30 years and whose entire work was making analyses, testified that his analysis showed that it was not a sample of normal acidulated soap stock; that when the sample was received the odor was very putrid; that the general appearance was muddy; and that the material was "a mixture of some sort." He testified further concerning the tests he ran upon the merchandise and made a comparison with an analysis of a normal soap stock and he showed quite a discrepancy in the content of the various ingredients of the normal soap stock and the imported merchandise. In his opinion there had been "some splitting taken place from a normal oil."

S. R. Grovenstein, plaintiff's general superintendent of the refineries, testified that it was his duty to supervise the manufacture of the various special oils produced from raw linseed oil and raw soybean oil and other chemically treated oils. He described the processing of the flaxseed to produce raw linseed oil, and the refining of the raw linseed oil. Upon production of the soap stock, the witness testified it was either sold as soap stock or it is further treated with acid to obtain an acidulated soap stock, which is used to produce a pure grade of fatty acids. When desired to further break down the soap and convert it into what is generally known as acidulated soap stock, the witness testified that it is normally treated with sulphuric acid. The

witness further stated that acidulated soap stock is also used in the production of a bodied oil, very dark in color, which would be suitable for cheap barn paints where color is of no significance. From an analysis of the imported material, the witness was of the opinion that it was a mixture of acidulated soap stock and soap stock. In his opinion, it could have been the result of the use of insufficient sulphuric acid to thoroughly split the soap stock, which would result in part of the soap stock having reacted with sulphuric acid and producing acidulated soap stock, and the balance would have remained as a soap stock, thus resulting in the mixture.

The plaintiff's chief chemist, Orlando Graziano, testified that the nature of the material does not bring it within the scope of an acidulated soap stock, but that it would be a mixture; that it is not such a material that would be designedly sought as it has no commercial usefulness without further treatment; that it is not ordinary soap stock resulting from the alkalizing of crude linseed oil but something further has been done to it.

Walter Leake, the deputy collector in charge of customs at the port of Toledo, testified that the merchandise was accepted as being correctly classified by the importer as a nonenumerated manufactured article at the time of entry. Later, the importer attempted to have it reclassified as a waste.

Counsel for the plaintiff contends that the plaintiff thought it was importing acidulated soap stock and thus incorrectly classified it; that the undisputed facts show it is a refuse, a useless mixture never designedly sought and without any value as such, without further processing. It is further contended that the 4½ cents per pound tax is not applicable to the merchandise because the fatty acids and salts of fatty acids therein never had a separate existence.

As none of the plaintiff's witnesses knew the processes to which the merchandise was subjected in Canada prior to importation but conceded that it was linseed oil foots, which had been somewhat treated with sulphuric acid, thereby converting it from the foots into a partially acidified linseed oil soap stock, counsel for the Government contends that because of such treatment, it was properly assessed by the collector. It is further contended that the 4½ cents per pound tax under section 2491 (b) and (c), *supra*, was properly assessed, it being admitted that the importation contained 28.1 per centum free fatty acids and 12.0 per centum of salts of fatty acids; that the exception from tax refers to oil-bearing seeds which have not undergone full commercial oil extraction processing, and since the linseed oil from which the product was derived did have a separate existence as an oil, the exception cannot apply.

It is abundantly clear from the voluminous record and briefs before us that the imported merchandise is a mixture containing large percentages of free fatty acids and salts of fatty acids; that it is neither merely acidulated soap stock nor a linseed oil foots, derived from the alkali refining of linseed oil. Although there is considerable conjecture as to the mode of production of the imported merchandise, the fact remains that the record is entirely silent as to its source. One of the witnesses, in visualizing what took place in the production of the product, admitted that sulphuric acid had been added to the soap stock but not in sufficient quantities to change it to an acidulated soap stock. Free fatty acids derived from the residue in the refining of oil have been held to be a nonenumerated manufactured article rather than a waste. See *United States* v. *McLaughlin & Freeman*, 35 C. C. P. A. 34, C. A. D. 368; *Wypenn Oil Company, Inc.* v. *United States*, 24 Cust. Ct. 165, C. D. 1226, protest 116725–K, decided March 28, 1950. In the *Wypenn Oil Company, Inc.* case, *supra*, the court also held that in a product containing fatty acids, the internal revenue tax was properly assessable upon the basis of the weight of such products therein.

For the reasons stated, judgment will be entered in favor of the Government.