(C. D. 1232)

BALFOUR GUTHRIE & CO., LTD., ET AL. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 11, 1950)

*Jerome G. Clifford* and *Eugene R. Pickrell* for the plaintiffs.
*David N. Edelstein,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

JOHNSON, Judge: The merchandise at issue in these cases consists of linseed oil fatty acids, palm kernel oil fatty acids, soybean oil fatty acids, and corn oil fatty acids. Duty was assessed thereon at the rate of 20 per centum ad valorem under the provisions of paragraph 1558 of the Tariff Act of 1930, as a nonenumerated manufactured article. The plaintiffs claim that the merchandise is properly dutiable at only 10 per centum ad valorem under the same paragraph as a nonenumerated unmanufactured article, or under paragraph 1555 as waste, not specially provided for.

At the trial the record in the case of *A. J. Murray & Co.* v. *United States,* 7 Cust. Ct. 160, C. D. 560, was admitted in evidence and made a part of the record herein. In that case, the shipment consisted of linseed oil fatty acids. It was agreed between the parties that the manner in which the goods were processed was as follows:

Linseed Oil is mixed with about 25% water and is heated for 36 hours in a closed tank (with only a small outlet for steam), while adding 1% acid decomposing oil, which acts as catalyst. After about 36 hours the steam is shut off and the tank is left undisturbed for a few hours. The glycerin water, which has a greater specific gravity than the fatty acids, settles on the bottom of the tank, while the fatty acids float on top. The glycerin water is now tapped off and the fatty acids are tapped (drawn-off) into the fatty acid tanks in order to thereupon be transferred into barrels or drums for shipment. This is the only operation to which the oil is subjected.

There, the plaintiff and defendant each produced two witnesses. The court summarized their testimony as follows:

Plaintiff's first witness testified that the method of production used by the manufacturer, as appearing in the depositions, was known to him as the Twitchell process; that the components of crude linseed oil are glycerin, linseed fatty acids, and minor amounts of protein with some water; that linseed oil occurs in nature in ripened flaxseed; that in the immature seed glycerin is first formed and then the fatty acids; that in the process of ripening the two basic hydrocarbon radicals are united by oxygen through a natural reaction known as esterification, forming linseed oil; that, after extraction from the ripened flaxseed, the raw linseed oil consists of fatty acid radicals and glycerol radicals, neither of which can exist except in combination with each other; that raw linseed oil is the subject of a continuous hydrolysis when stored, as well as to a continuous esterification, the reverse of hydrolysis; that therefore there is a constant interchange going on with different molecules of the linseed oil taking part and, although the esterification and hydrolysis processes tend to balance each other, all of the fatty acid radicals in linseed oil, over a period of time, have existed as free fatty acids; that upon storage of linseed oil the basic hydrocarbon radicals are separated into glycerin and fatty acids to the extent of 1 or 2 per centum of fatty acids; that in the separation thereof the fatty acid radicals pick up hydrogen from water to form fatty acids and the glycerol radicals pick up hydroxyls or hydrogen from water to form glycerin, the reagents effecting the chemical change remain substantially unchanged although the result is that the free fatty acids and the glycerin are separated; that such natural process was too slow for commercial purposes as it would take years to develop considerable quantities; and that the process used by the manufacturer merely hastens the hydrolysis which would have occurred naturally in time. The witness admitted, however, that raw linseed oil contains little or no glycerin as such and only a small percentage of fatty acids as such; that the majority of fatty acids are chemically combined with the glycerin under the designation of "fatty acid radicals" and "glycerol radicals," neither of which can exist in the free state; that the fatty acids combined with the glycerin in linseed oil exist as a distinct entity, and as a different chemical compound known as glyceride ester; and that, to obtain the fatty acid from the linseed oil, it is necessary to split up such chemical compounds.

The witness further testified that hydrolysis is a reaction taking place between a raw linseed oil compound and water resulting in a new product not existing as such in raw linseed oil; that the components of water, $H_2O$, liberate the acid and alcohol in the case of esters and the water splits up and becomes something else; that the product formed by hydrolysis has many of the characteristics of raw linseed oil as well as different ones which, with its similarities, make it a valuable product; that the linseed oil and the fatty acids are both valuable for their drying characteristics, although the fatty acids are used for drying purposes in another connection than linseed oil, which, unlike fatty acids, is valuable as a vehicle in paint. Inasmuch as the fatty acids exist in the oil in the form of acid radicals and the glycerin as glycerol radicals, and by means of the methods used by the manufacturer were obtained in their free state, the witness was of the opinion that nothing new had been created by the chemical reaction. He admitted, however, that, although the differences are due to the acid radicals being combined with glycerol radicals in the one case and with hydrogen in the other, the fatty acid radicals are chemically combined with glycerol radicals to form linseed oil and that linseed oil is a different chemical entity from either the fatty acid radical or the glycerol radical and also that the fatty acids and glycerin obtained by hydrolysis are different entities.

Plaintiff's second witness also testified along the same lines that the fatty acids produced by the Twitchell process are the same fatty acids occurring in nature.

Defendant's first witness testified that his company uses practically the same method as used herein to produce linseed oil fatty acids; that the Twitchell method is known as a saponification process, whereby a soap or fatty acid and glycerin is formed as the result of the reaction of an oil with either water or any alkali; that in linseed oil there are the components for making fatty acid but they are not present as an acid; that there is present in linseed oil a glyceride of fatty acids, without which there is no linseed oil; that such glyceride is composed of glycerol radicals and fatty acid radicals, which exist separately in theory only; that when starting with a molecule of linseed oil, after hydrolysis, there appears three groups of fatty acids and one molecule of glycerin; that in such process a chemical reaction takes place resulting in the creation of new chemicals and in such reaction there is a rearrangement of the molecular formation resulting in the formation of fatty acids and glycerin; that by hydrolysis the addition of the hydrogen atom to the fatty acid radical creates a new chemical entity entirely separate and independent of the constituents of raw linseed oil; and that the fatty acids known as such in the trade, in use under the name of linseed fatty acids, consist of a mixture of various types of fatty acids which have certain properties when combined.

The witness further testified that only 1 or 2 per centum of fatty acids exist in the raw linseed oil as fatty acids; that after processing the yield is about 95 per centum of fatty acids; that the fatty acids so produced have different characteristics from linseed oil, both physical and chemical; that in his experience of testing raw linseed oil under storage conditions he has found that the fatty acid content after 2 years' storage would increase to about 3 per centum, whereas in the Twitchell method the fatty acid is increased within 2 days from 2 per centum to 95 per centum.

The second witness on behalf of defendant testified that linseed fatty acids are used in the manufacture of soaps, synthetic resins of the alkyd type and as a component of driers, but are not used separately as a drier, because the element which performs the drying on oils is a metal and any other material besides acids may be used there; that he is familiar with the process of production of the merchandise herein; that hydrolysis is a chemical reaction and it results in the formation or creation of entirely new products the same as calcium carbide (a chemical compound) which, with the addition of water (a chemical compound), creates acetylene gas; that there the hydroxyl or (OH) group of the water and the hydrogen of the water unite with the carbide, forming acetylene gas and the same reaction with water takes place in the present product; that linseed oil is a compound of a fatty acid radical and a glycerol radical; that the glycerol radical is not glycerin and the fatty acid radical is not fatty acid, the glycerol lacking the essential (OH) group and the fatty acid lacking the essential hydrogen; that the hydrolysis adds the hydrogen to the fatty acid factor, without which there is no acid, because an acid is always dependent upon the presence of hydrogen and its characteristics are purely determined by the presence of hydrogen; that hydrolysis creates new entities having physical and chemical characteristics different from linseed oil; that there is a vast difference between the enzyme action (unorganized ferments existing in seeds) occurring naturally and that occurring in an industrial process with the Twitchell reagent, because, in the natural reaction, such as the enzyme action, specifically lipase, which means an enzyme which splits oil, the enzyme is present in the natural flaxseed, but normally does not have an opportunity to act very much; that when it does act, however, it produces some free fatty acid; that such reaction reaches an equilibrium beyond which it does not act, while in the Twitchell process, the same reaction taking place is definitely controlled; that there

is an equilibrium factor in each reaction, which in the manufacturing operation is overcome by the presence of steam and pressure and the reaction is forced to practical completion, almost 100 per centum, while in the natural enzyme, linseed oil may stand for 10 years and 100 per centum acid would not be attained; that in his experience he has found under the worst possible conditions, with water present in the oil, the natural enzymes would not enable more than 20 per centum free fatty acids to be present; and that regardless of the process used, the splitting of the factors is a chemical reaction and new products are formed.

Upon the basis of the evidence produced, the court held that the linseed oil fatty acids were properly dutiable as a nonenumerated manufactured article as assessed by the collector.

In addition to the incorporated record, plaintiffs produced further testimony by Dr. Michael Lauro, a chemical engineer, chief chemist for the New York Produce Exchange, who specializes in oils and fats. He testified that fatty acids are free and native to the flaxseed, palm kernel nut, soybean, and corn at the time of maturity of the plants and at the time of compression of the oils therefrom. He further testified that in their undeveloped state there was always a large amount of free fatty acid in these plants, but in their mature and ripe state the bulk of the oil components, the fatty acid and glycerin, has combined to form glycerides, although some free fatty acids are always present, and that as the plants decay, there is a breaking down or splitting of the glycerides into the components of the oil, that is, the fatty acids and glycerin appear in increased amounts.

The uncontradicted evidence, produced by the witness appearing in the case at bar and the witnesses in the incorporated case, indicates that nature's processes begin with free fatty acids and free glycerin and end with the same, and that there is some free fatty acids present at all times.

It is argued by the plaintiffs, in view of the fact of the presence of such acids at all times, and because the final decomposed state of the oil consists of free fatty acids and glycerin, that synthetic processes which hasten the natural process of separation are essentially the same as the natural processes. Consequently, whatever process is used, nothing has been done to the fatty acids *per se*. They are as they appeared in nature and therefore the separation by hydrolysis of such fatty acids from their native tissue is not to be regarded as a manufacturing process. Counsel for plaintiffs stated that in order to regard fatty acids as manufactured, something must be done to or upon the fatty acid *per se* over and above what nature itself does.

In *United States* v. *Stone & Downer*, 12 Ct. Cust. Appls. 293, T. D. 40296, the appellate court held that as a general rule, a mere cleaning process, the purpose of which is to isolate the article of commerce from impurities, and which does not advance it beyond a clean state or condition, and which does not affect the article *per se*, cannot be said to be a manufacturing process. In our opinion, a cleaning process cannot

go much beyond the pronouncement by the court in the foregoing case. Certainly, the mixing of the oils here in question with 25 per centum water and a 1 per centum decomposing oil and then subjecting it to heat for a period of 36 hours in a closed tank, the result of which is that the oil is separated into glycerin and fatty acids, goes far beyond a process of cleansing. To be sure, it is decomposing a compound into its parts, such as would happen naturally over a long period of time, but in the first place there has been a chemical change in the original article, and in the second place a new article emerges separate and apart from the original oil, a condition in which it did not appear before the hydrolysis took place. As this court stated in the *A. J. Murray & Co.* case, *supra:*

\* \* \* Linseed oil is a stable article of commerce and therefore does not possess the inherent characteristics of splitting up into its component parts. The formation of fatty acids and glycerin through the natural splitting and subsequent esterification, so that at one time or another in the oil all of the fatty acid units were free, presents an insufficient basis upon which to predicate the theory that an artificial hastening of the splitting would not be regarded as a manufacture, particularly in view of the evidence that the constant action within the oil was controlled by means of an equilibrium factor which prevented the oil from disintegrating and had it not been for the processes applied to the oil no fatty acid in commercial quantities would have been produced.

For the reasons stated, judgment will be entered in favor of the defendant.