BALFOUR GUTHRIE & CO., LTD. *v.* UNITED STATES (No. 4655) [1]

United States Court of Customs and Patent Appeals, May 8, 1951

*Eugene R. Pickrell* and *Jerome G. Clifford* for appellants.
*David N. Edelstein*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This appeal is from a judgment of the United States Customs Court, Third Division, given pursuant to its decision, C. D. 1232, 24 Cust.

[1] C. A. D. 457.

Ct. 202, overruling 27 protests involving the classification of certain fatty acids obtained from crude linseed, palm kernal nut, soya bean, and corn oils. The Collector of Customs classified the merchandise as nonenumerated manufactured articles at the rate of 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930. The protests claimed that the goods are dutiable at the rate of 10 per centum ad valorem as nonenumerated unmanufactured articles under the same paragraph.

The statute reads as follows:

Par. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The record consists of the testimony of one witness who appeared on behalf of appellants, and the record in the incorporated case of *A. J. Murray & Co.* v. *United States*, C. D. 560, 7 Cust. Ct. 160. The merchandise in the incorporated record was oil fatty acids derived from linseed. Duty was assessed thereon as a nonenumerated manufactured article at the same rate and under the same paragraph as the merchandise involved herein. The plaintiff there, like appellants here, claimed the goods to be raw or unmanufactured and consequently properly dutiable at the rate of 10 per centum ad valorem.

It appears that flaxseed, palm kernal nut, soya bean, and corn, contain free fatty acids and free glycerin. As the seeds or fruit mature those two substances combine to make a compound referred to variously as oil, ester, and glyceride. The process resulting in the compound is known as esterification. In the process, the free fatty acid molecule loses a hydrogen atom and thereby becomes what is known as a fatty acid radical. The free glycerin, at the same time, loses a hydroxyl atom and becomes what is called in chemistry a glycerin radical. The hydrogen atom and the hydroxyl atom combine to form water. It appears that the molecular change occurs by reason of the action of a natural enzyme contained in the seed or fruit. When the seed or fruit reaches maturity esterification appears to cease and the process is reversed so that the oil is divided into its original component parts of fatty acid and glycerin. Such reverse phenomenon is known as hydrolysis.

As was stated by one of the witnesses, esterification or development continues during the process of growth and the hydrolysis or splitting up of the compound into its original components may be called decay. The free fatty acid resulting from natural hydrolysis is of such small volume as to negative production on a commercial scale.

The imported merchandise is the result of the Twitchell process which is described in the record of the incorporated case. The

description has to do with linseed oil but the same process was used in the production of the involved merchandise. It reads as follows:

Linseed oil is mixed with about 25% water and is heated for 36 hours in a closed tank (with only a small outlet for steam), while adding 1% acid decomposing oil [usually a suphonic acid], which acts as catalyst. After about 36 hours the steam is shut off and the tank is left undisturbed for a few hours. The glycerin water, which has a greater specific gravity than the fatty acids, settles on the bottom of the tank, while the fatty acids float on top. The glycerin water is now tapped off and the fatty acids are tapped (drawn-off) into the fatty acid tanks in order to thereupon be transferred into barrels or drums for shipment. This is the only operation to which the oil is subjected.

The fatty acid yield of the Twitchell process amounts to more than 90% of the free fatty acids contained in the oil. Its advantage over the natural process is great, not only because in the latter process a much smaller yield is produced, but also because the natural process takes a very much longer time to operate. It appears that in the process of nature, esterification and hydrolysis are continuous, that is, sometimes esterification is present and at other times hydrolysis. Consequently, the fatty acid content is not constant.

It has been and is the contention of counsel for appellants that the Twitchell process does not differ from the process of nature in either character or accomplishment and that if the expressed oil be left to itself, by natural law the hydrolysis takes place. For that reason, counsel urge that the Twitchell process is not a manufacturing operation and that the involved merchandise is not different from that which is produced by nature and, therefore, the involved fatty acids are not manufactured articles.

The trial court, in its decision, cited the case of *United States* v. *Stone & Downer*, 12 Ct. Cust. Appls. 293, T. D. 40296, in which it was held that as a general rule a mere cleaning process for the purpose of isolating an article of commerce from impurities and not advancing the article beyond a clean state or condition and not affecting the article *per sé*, cannot properly be said to be a manufacturing process.

The trial court stated that in its opinion "a cleaning process cannot go much beyond" what was said in the *Stone & Downer* case, *supra*, and was of opinion that the Twitchell process, as hereinbefore set out, extends far beyond a cleaning process. In that connection, the trial court stated:

To be sure, it is decomposing a compound into its parts, such as would happen naturally over a long period of time, but in the first place there has been a chemical change in the original article, and in the second place a new article emerges separate and apart from the original oil, a condition in which it did not appear before the hydrolysis took place.

There can be no question but that the imported merchandise is produced by a manufacturing process and, therefore, regardless as to the identity of the articles produced by that process with that which

is produced in nature, such identity is immaterial. Unquestionably, the imported goods are manufactured articles and were properly so classified by the collector.

A reading of the cases of *John v. Carr & Sons, Inc. v. United States*, 25 Cust. Ct. 77, C. D. 1267; *Frazee v. Moffitt*, 18 Fed. 584; *In re Herman Keck Mfg. Co.*, 8 Treas. Dec. 316, T. D. 25597; *In re Wells Fargo & Co.*, 13 Treas. Dec. 669, T. D. 28200; *Cone & Co., Inc. v. United States*, 14 Ct. Cust. Appls. 133, T. D. 41672; *Merck & Co. v. United States*, 5 Ct. Cust. Appls. 347, T. D. 34549; *United States v. Sheldon & Co.*, 2 Ct. Cust. Appls. 485, T. D. 32245; *Hampton Jr. & Co. v. United States*, 6 Ct. Cust. Appls. 392, T. D. 35926; *United States v. W. S. Makaroff et al.*, 16 Ct. Cust. Appls. 531, T. D. 43263; *United States v. Half Moon Mfg. & Trdg. Co.*, 24 C. C. P. A. (Customs) 232, T. D. 48668; *Standard Varnish Works v. United States*, 59 Fed. 456; and *United States v. Schrock & Squires*, 5 Ct. Cust. Appls. 444, T. D. 34974, all of which have been cited by counsel for appellants to sustain their contention, are not in point under the facts of the instant case.

The judgment of the United States Customs Court is *affirmed*.