UNITED STATES *v.* THE BALTIMORE & OHIO R.R. CO. A/C UNITED CHINA & GLASS COMPANY (No. 4956)[1]

[1] C.A.D. 719.

United States Court of Customs and Patent Appeals, July 10, 1959

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section, (*Mollie Strum*, trial attorney, of counsel), for the United States.

*Stein and Shostak*, (*Marjorie M. Shostak* of counsel) for appellee.

*Lamb & Lerch* (*David A. Golden*, of counsel) *amicus curiae*.

[Oral argument December 4, 1958, by Mr. FitzGibbon, Miss Shostak and Mr. Golden]

Before WORLEY, Acting Chief Judge, and RICH and MARTIN, Associate Judges.

MARTIN, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, C.D. 1959, sustaining the importer's protest and holding that the merchandise here involved, consisting of certain so-called after dinner coffee cups and saucers, was erroneously classified by the collector as decorated china tableware under paragraph 212 of the Tariff Act of 1930.

The court below held that the merchandise should have been properly classified, as claimed by the importer, under the same paragraph, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, and the President's Proclamation of May 4, 1948, T.D. 51909, not as tableware but as ornamental articles.

The pertinent statutory provisions read as follows:

Paragraph 212:

China, porcelain, and other vitrified wares, * * *; painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 70 per centum ad valorem. In addition to the foregoing there shall be paid a duty of 10 cents per dozen separate pieces on all tableware, * * *.

Paragraph 212 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, TD 51802 (82 Treas. Dec. 305, Schedule XX, pp. 21–23), and by Presidential Proclamation 2784 of May 4, 1948, TD 51909 (83 Treas. Dec. 166–172) :

Articles of the kinds provided for in the preceding item which are painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware, not specially provided for:

\* \* \* \* \* \* \*

Other (except tableware, kitchenware, and table and kitchen utensils):

\* \* \* \* \* \* \*

Not containing 25 per centum or more of calcined bone_____ 50¢ per doz. but not less than 45% nor more than 70% ad val.

The merchandise at bar consists of china cups and saucers of comparatively small size, known as after-dinner size. They are of various shapes and decorated in different patterns. Some have footed bases, and others have scalloped or fluted rims. The record shows that the goods were imported from Japan and are intended to be sold at a low price for each cup and saucer.

The importer, appellee, contends that the cups and saucers in issue are not used chiefly for serving coffee or other liquids, but that their chief use is rather for display as ornaments on racks or shelves. The Customs Court agreed with the importer that the chief use of the instant merchandise was not as tableware but for display as ornaments. On that basis, the lower court sustained the protest.

Classification of the subject merchandise, irrespective of its nomenclature, is dependent upon its chief use. This court has determined the statutory meaning of tableware in *United States* v. *Butler Bros.*, 33 CCPA 22, C.A.D. 310, at page 28:

We think it is evident from the dictionary definitions of the term "tableware" that in using that term in paragraph 212, *supra*, the Congress intended to provide for only such articles as are chiefly used upon a table for the service of meals, and that it was not intended to cover novelty articles, \* \* \*.

See also *United States* v. *Ellis Silver Co.*, 16 Ct. Cust. Appls. 570, T.D. 43297; *United States* v. *The Friedlaender Co.*, 21 CCPA 103, T.D. 46445.

 However, it is not the use of a particular shipment but rather that of the particular class or type of goods involved which determines its chief use. *United States* v. *Spreckels Creameries, Inc.*, 17 CCPA 400, T.D. 43835.

 Moreover, while the meaning of an eo nomine designation must be determined as of the enactment of the tariff provision, *United States* v. *C. J. Tower & Sons*, 26 CCPA 1, T.D. 49534, where there is

4

a classification expressly dependent on the chief use of the class of merchandise involved, the determination of such use of the imported class of merchandise should be made as of the date of importation thereof. *H. J. Baker & Bro.* v. *United States*, 37 CCPA 52, C.A.D. 419, and cases there cited. With reference to this proposition, this court stated in *Wilbur-Ellis Co., et al.* v. *United States*, 18 CCPA 472, T.D. 44762, at page 479:

* * * if there be an *eo nomine* designation, the common meaning thereof must be determined as of the date of the enactment of the tariff act, but if it is further provided that the thing designated shall be classified under a given provision only if chiefly used for a specified purpose, the question of use should be determined, *not as of the effective date of the tariff act but as of the date of the importation of the particular merchandise involved or immediately prior thereto.* (Emphasis ours.)

We believe that where, as here, classification is to be determined on the basis of chief use, that determination should be made at the time of importation, whether or not the tariff provision in question explicitly requires classification by chief use.

The evidence in the case at bar in some particulars is quite contradictory, appellant's witnesses testifying that the merchandise is used chiefly for drinking coffee and appellee's witnesses stating that it is used primarily as ornaments. There is some unrebutted testimony, however, which we believe to be most significant.

The vice president of the United China & Glass Company, the importers, stated that about six or seven years prior to the date of his testimony in 1954, it appeared that a fad of collecting "after-dinner cups and saucers" for ornamental purposes was developing in this country. An investigation was undertaken by the company which confirmed this fact, and the vice president further stated that from that time on, they spent much effort in endeavoring to take full advantage of this new source of business. This same witness testified that during this period his company's importation of this particular class of articles reached some 120,000 dozen pieces. The importer's president added that this volume compared to the "* * * few hundred dozen of what we call the staple ones that you drink out of * * *," which had been previously promoted.

Significantly, prior to this tremendous increase in the sale of "after-dinner cups and saucers," their usage was most prevalent in and around New Orleans where it was a custom to drink small cups of coffee periodically during the day, whereas the fad of collecting these articles for display purposes spread over the whole United States.

The testimony also revealed that in order to promote and stimulate this business, the importer changed the designs of the cups and saucers every six months; also six different shapes were employed,

to which were applied three different decorations, making a total of eighteen items in one assortment, eight of which assortments were placed in a carton containing twelve dozen pieces for importation.

The merchandise was displayed in such stores as F. W. Woolworth and S. H. Kress in displays wherein the eighteen different designs would appear on one large table. It was customary, at least in these stores, for a purchaser to buy one, two, or three cups and saucers within a price range of thirty-five to eighty-nine cents per set. Except in rare instances, these items did not match dinnerware sets and were not displayed in the departments of the stores which featured dinnerware sets. Furthermore, the testimony disclosed that purchasers who bought demi tasse cups and saucers for drinking purposes usually bought those which matched other items in a complete dinnerware set, and such goods were purchased in the same numbers as the other items in the set, namely, six, eight or twelve.

Although there was some evidence as to the method of display of the merchandise and the custom of purchasing the items to the contrary, we believe the testimony which sets forth the facts heretofore outlined is more convincing.

Another factor of some significance which should be noted is that no coffee pots, sugar bowls or cream pitchers were included in the cartons containing the merchandise at bar, nor were these items displayed with the importations in the various stores.

Merely because one *can* drink from the imported cups and saucers does not establish the chief use thereof. A fugitive use or a mere susceptibility or capability of use is not controlling as to such chief use. *United States* v. *Butler Bros.*, supra; *Richardson Co.* v. *United States*, 8 Ct. Cust. Appls. 179, T.D. 37289; *United States* v. *James P. Heffernan Paper Co.*, 17 CCPA 61, T.D. 43358, and cases there cited. It would have been more important to introduce evidence to prove that the eating and drinking habits of the people of this country had changed to such an extent so as to require a vast increase in the supply of these small cups and saucers in order to satisfy the demand of the increased number of people now drinking coffee from demi tasse cups. Without such evidence, this court must give credence to the substantial testimony in the record which attributes this increase to the fad of using this merchandise chiefly for display purposes.

The witnesses for appellee, importers and merchants who dealt with the variety of ornately decorated, multi-patterned cups and saucers here in issue, testified that those who purchased from them did so chiefly for decorative purposes. Since such witnesses have every incentive to know the particular uses to which their wares are appropriated, we are of the opinion that their testimony as to

chief use has great probative value. *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T.D. 31120; *Kubie & Co.* v. *United States*, 12 Ct. Cust. Appls. 468, T.D. 40668.

The employees of F. W. Woolworth, S. H. Kress, Gump's, and the Cliff House Gift Shop of San Francisco, and all others who were trying to participate in this particular trade, did everything possible to promote and capitalize on this fad which had nothing to do with the sale of tableware for eating and drinking purposes.

There was no thought of making these items durable; in fact, several witnesses testified that frequent washings of the articles would cause the decorations to become indistinct. The principal objective was to make them cheap and gaudy.

In contrast to the testimony submitted in behalf of the importer showing great increases in sales of articles like the imported decorated cups and saucers, several of the witnesses for the government testified that there had been no material change in the volume of sales in recent years of the after-dinner cups and saucers which they averred were utilized by purchasers for beverage purposes. In fact, one such witness admitted that sales of after-dinner cups and saucers had, to his knowledge, materially decreased in recent years.

Predicated upon a variety of factors including the shapes, designs, and quantities in which the articles were sold, the novelty departments and types of stores which handled the merchandise, and the vast increase of sales of "after-dinner coffee cups," we find that the preponderance of the evidence supports appellee's contention that the subject importation is of a class whose chief use is as ornamental or decorative ware rather than "tableware," as used in the applicable exception set forth in GATT. ■ We stated in *United States* v. *Quon Quon Company*, 46 CCPA 70, C.A.D. 699:

The Government would have us shut our eyes to the evidence as to what the imported articles are used for, apparently only for the reason that the term "baskets" in paragraph 411 provides for baskets *by name*. We have been unable to find in the Government's brief citation of any authority requiring us to do this. While unhesitatingly granting the truth of the contention that "baskets" in the tariff act provides for baskets "eo nomine," this does not help us in the least to decide whether the imported articles *are* baskets. We are not so trusting of our own notions of what things are as to be willing to ignore the purpose for which they were designed and made and the use to which they were actually put. Of all things most likely to help in the determination of the identity of a manufactured article, beyond the appearance factors of size, shape, construction and the like, use is of paramount importance. To hold otherwise would logically require the trial court to rule out evidence of what things actually are every time the collector thinks an article, as he sees it, is specifically named in the tariff act.

■ Furthermore, this court has stated many times that unless the lower court's findings of fact are clearly unsupported by the evidence, such findings should not be disturbed. *United States* v. *Riebe*, 1 Ct.

Cust. Appls. 19, T.D. 30776; *Walter Johnson* v. *United States*, 21 CCPA 129, T.D. 46464; *United States* v. *C. J. Tower & Sons*, 38 CCPA 131, C.A.D. 450; *W. N. Proctor Co.* v. *United States*, 40 CCPA 33, C.A.D. 494; *Carey & Skinner, Inc.* v. *United States*, 42 CCPA 86, C.A.D. 576; *United States* v. *F. W. Myers & Co., Inc.*, 45 CCPA 48, C.A.D. 671. This rule is applicable to a determination of the chief use of a class of importation wherein contradictory testimony must be evaluated by the trial court in the light of the trial proceedings before them. *United States* v. *Belgam Corp. et al.*, 22 CCPA 402 T.D. 47402; *United States* v. *F. W. Woolworth Co., Inc.*, 23 CCPA 98, T.D. 47765.

We find no error in the lower court's analysis of the evidence in this case; in fact, we agree with that court wherein it stated:

In our view, the weight of the evidence clearly establishes that the imported merchandise does not belong to the class of articles which is chiefly used upon the table for the service of meals, but to the class of novelty articles which is chiefly used for display or decoration. We hold, therefore, that this merchandise is not properly classifiable as tableware, but is dutiable as decorated china, other than tableware, at 50 cents per dozen, but not less than 45 per centum nor more than 70 per centum ad valorem, under paragraph 212 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, and the President's proclamation of May 4, 1948, T.D. 51909.

Appellant further contends that this court should reverse the decision of the lower court because of the administrative difficulties which would be involved if customs officers are compelled to differentiate between china used for tableware and that used as ornaments. Of course, this proposition is untenable. This court could not misinterpret a statute and thereby thwart the will of Congress because of extraneous matters such as administrative problems.

We, therefore, *affirm* the decision of the lower court.

WORLEY, C. J., concurs in result.
RICH, J., concurs with opinion.

---

WORLEY, Chief Judge, concurring.
My agreement with the result reached in the majority opinion does not necessarily mean agreement with everything that is said therein.

---

RICH, Judge, concurring.
The factual record created in this case plus established law seem to compel the conclusion reached. However, I feel that it should be clearly stated that this is not a ruling that all after-dinner coffee cups are outside the category of "tableware," or even that the cups here involved are forever and necessarily outside of that category.

The corollary to Judge Martin's opinion is that if after-dinner coffee

cups are, at the time of importation, chiefly used for drinking coffee then they are "tableware." It troubles me somewhat to realize that we are imposing on the Collector the duty to evaluate contemporary socio-economic mores in order to determine whether or not coffee cups are tableware, since what we are deciding is that if they are being bought by consumers as a result of a fad or craze for collecting, they are not tableware; but if they are bought, chiefly, to be drunk out of they are tableware.

If the current fad dies down (and a fad, by definition, will), I suppose this might be reflected in diminishing imports and then the Collector would realize that these selfsame cups and saucers were being bought chiefly for drinking rather than exhibiting, and had become "tableware." The same legal result could ensue, however, from a craze for drinking demitasse, so the Collector must determine what current custom is chiefly responsible for the importation. I see no way to avoid such a result where a "use" provision is involved and the merchandise is such as to be subject to temporal shifts in use. It is essential, however, that we show the Collector where his duty lies and not lead him to think he can classify wares, such as those here involved, merely by inspecting them. He must familiarize himself with the contemporary behavior of purchasers with respect to the wares. The problem here is not unique. We recently held that what appeared to be baskets were really table tops, and that was determined by what they were being used for. *The United States* v. *Quon Quon Company*, supra.