**No. 61541.**—P. H. Petry Co. v. United States, protest 291806–K (New York).

FORD, Judge: By the suit listed above, plaintiff herein challenges the action of the collector of customs in classifying certain imported merchandise as articles having as an essential feature an electrical element or device, in chief value of metal, not specially provided for, under paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739. Plaintiff claims said merchandise is entitled to entry free of duty under paragraph 1643 of said act as shoe machinery.

The pertinent portions of the involved paragraphs are as follows:

Paragraph 353, as modified, supra:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

               

  Other * * *_____ 13¾% ad val.

Paragraph 1643:

Linotype and all typesetting machines, shoe machinery, * * * all the foregoing whether in whole or in part, including repair parts. [Free entry.]

At the trial of this case, a folder was admitted in evidence as exhibit 1, on page 1 of which is shown a picture of the subject machine, with details of the same machine on the remaining pages.

One witness testified for the plaintiff substantially as follows: That these machines are "About two yards by one yard table, I would say," weighing "roughly 800 to 1,000 pounds"; that "The first step in making a line of shoes is to determine from a master pattern the pieces of leather which are needed for the manufacture of the various sizes and widths of shoes. This machine has a pantograph system, and from a master model, it enlarges or reduces the contours of all the parts of the shoe"; that it operates on "Paper or a special cardboard, which is called pattern board, and which is used for—as a pattern for cutting the specific size of the leather piece"; "From the given master pattern, it makes not only the length enlargements but also the various widths for the various given— you know that shoe size 9, for instance, you have widths AAAA and so on— that's what it does."

On cross-examination, this witness was interrogated and answered as follows:

X Q. Now, does the Linham Pattern Grading Machine, which is the merchandise that we're concerned with here, after you begin with a master pattern, determine the different sizes, either upward or downward from the master pattern, by a series of calculations?—A. It could be done, but practically, it is done by an arrangement of levers, and it could be done by a hand pantograph, which is being done.

X Q. How does this machine do it?—A. This machine applies a system of pantographs; one for widths and one for the lengths, and a tracer pin guides the punching head, and the punching head cuts out all ready, the enlarged or reduced pattern.

X Q. Well, does that mean that starting with a pattern of say size 7–A—say that's your master pattern.—A. Yes.

X Q. And in seeking now to get the proper dimensions in all ways for say a 5–A, this machine, on pieces of paper, cardboard, pressboard or celluloid that may be below your master pattern, makes cuttings or markings?—A. That is

correct, but it is not below, but it is on a separate table. The tracer pin is connected with the punch head by these pantograph leverage, and by moving the tracer pin around, the cutting head automatically draws, I would say, the enlarged picture, and, at the same time, cuts it out of the paper.

\* \* \* \* \* \* \*

X Q. Now, isn't it a fact that the manufacturer of the shoe, per se, begins with the act of cutting shoes from leather or other material by hand cutter or clicking machine?—A. Correct.

X Q. Isn't that the first step?—A. After he has determined the shape. He must have first a shape, according to which to cut, and this is the first step, to find the shape, and that's what the pattern grading machine does. Cutting is the second step.

X Q. Well, it has nothing to do—this machine that you've imported here— has nothing to do at all with dealing with basic material, whether it's leather or some other fabric from which the shoe is made, isn't that right?—A. Not physically, but if you consider the shape of a shoe an essential part of the shoe, I would say that the machine is essential in making the shoe, because shaping the shoe is part of the shoe.

X Q. Well, prior to the production of machines similar to the Linham Pattern Grading Machine, did they cut out the shape of the leather or other material?— A. They do the same process by hand or by hand pantograph. They have to determine the entire range of sizes by drawing the patterns, and then they cut, according to these patterns, they cut the leather.

Based upon the record in this case, counsel for the defendant cites as supporting his contention that the subject merchandise is not regarded tradewise as shoe machinery, and that it is not used in a manufacturing operation upon shoes *per se*, the case of *United States* v. *Laing Harrar & Chamberlin*, 21 C. C. P. A. (Customs) 235, T. D. 46763. While it is true that the Court of Customs and Patent Appeals held the merchandise involved in the *Laing* case, *supra*, not to be shoe machinery, the following from its decision in that case strongly supports the position of the plaintiff herein:

\* \* \* It was the duty of the importer to sustain the claim in his protest by showing that it was not such a device as it was held to be by the customs officials, and to show that it was used in a manufacturing operation upon shoes. \* \* \*

It is our view, that the evidence, not contradicted, hereinbefore quoted, clearly establishes that the involved machine is and was used in manufacturing shoes. It is axiomatic that before one can have a shoe, one must have a pattern. This machine produces the pattern for the shoe to the exact size for both width and length. In the *Laing* case, *supra*, the appellate court quoted the following from the Summary of Tariff Information, 1929, at page 2254:

#### SHOE MACHINERY

**Description and uses.**—In shoe machinery are included machines for cutting and sewing shoes and *for other manufacturing operations*. Many of these machines are highly specialized. [Italics supplied.]

To sustain the contention of the defendant herein, would require us to eliminate from the above quotation the words "for other manufacturing operations." The involved machine also answers the above "description and uses," in that it is a highly specialized machine. With the above information on shoe machinery before the Congress, it is clear that, in enacting the provision for shoe machinery, it did not intend to limit the provision to machines for cutting and sewing shoes, but intended the provision to cover and include, as well, machines for other manufacturing operations, such as those performed by the subject machine.

Based upon the record in this case, we hold the merchandise covered by the above suit to be entitled to entry free of duty under paragraph 1643 of the Tariff Act of 1930, as alleged by the plaintiff. Judgment will be rendered accordingly.