KRODER REUBEL CO., Inc., Alltransport, Inc.,

v.

UNITED STATES.

C.D. 2186; Protest No. 286487–K.

United States Customs Court,
Second Division.

June 15, 1960.

Ford, J., dissented.

Barnes, Richardson & Colburn, New York City (E. Thomas Honey, New York City, of counsel), for plaintiffs.

George Cochran Doub, Asst. Atty. Gen. (Alfred A. Taylor, Jr., New York City and Henry J. O'Neill, Washington, D. C., trial attys.), for defendant.

Before LAWRENCE, RAO and FORD, Judges.

LAWRENCE, Judge.

An importation of brass pole rings was classified by the collector of customs as articles not specially provided for, composed in chief value of brass, in paragraph 397 of the Tariff Act of 1930 (19 U.S.C.A. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and duty was imposed thereon at the rate of 22½ per centum ad valorem.

Plaintiffs claim that the merchandise is properly classifiable as household utensils, composed of brass, and dutiable at the rate of 15 per centum ad valorem within the provisions of paragraph 339 of said act (19 U.S.C.A. § 1001, par. 339), as modified by the General Agreement on Tariffs and Trade, supra, supplemented by Presidential proclamation, 83 Treas. Dec. 166, T.D. 51909.

The pertinent text of the statutes involved is here set forth:

Paragraph 397, as modified, supra:

"Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \*

"Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with

platinum, gold, or silver, or colored with gold lacquer:

"Woven wire fencing  *  *  *

*   *   *   *   *   *

Other  *  *  *....22½% ad val."

Paragraph 339, as modified, *supra:*

"Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for (except articles composed wholly or in chief value of tin or tin plate * * *), whether or not containing electrical heating elements as constituent parts thereof:

*   *   *   *   *   *

"Not plated with platinum, gold, or silver, and not specially provided for:

"Carbonated water siphons  *  *  *

"Other:

"Composed wholly or in chief value of brass ..........15% ad val."

Inasmuch as the provisions of paragraph 339 are more specific than those of paragraph 397, the basic question for our determination is whether or not the pole rings in controversy are, in fact, household utensils within the meaning of said paragraph 339.

The only witness in the case, Jacques C. DeJong, testified for the plaintiffs. The substance of his testimony follows:

From June 1953 to February 1956, he was associated with Kroder Reubel Co., Inc., ultimate consignee of the instant merchandise (which was imported in August 1954) and one of the plaintiffs herein, in charge of imports and sales. He is now president of J. C. DeJong & Co., Inc., engaged in interior decorators' and builders' hardware.

He identified exhibit 1 as representative of the merchandise described on the invoice as ¾-inch pole rings, and of the other items, invoiced as 1 inch, 1½ inches, and 2 inches, except as to size. The rings are used by sliding them over curtain rods (see collective exhibit 2) and attaching curtains or draperies by means of hooks to facilitate their free movement. The imported merchandise was sold to wholesalers, department stores, and interior decorators throughout the United States. DeJong has personally observed the use of such merchandise to hang window curtains and draperies in homes he had visited in New York, Chicago, Philadelphia, and Boston, and "many a time in the homes of friends." His sales had extended to California, Texas, Michigan, Illinois, all of New England, Pennsylvania, the Dakotas, Washington, and New York. Based upon his experience, knowledge, and observation, the merchandise was chiefly used in the home.

The term "household utensils," as it appears in the statute above quoted, has been judicially defined as relating to articles which serve a utilitarian purpose and are chiefly used in the household for the care and maintenance of the home and for the convenience and comfort of its members. Pramette Juvenille Furniture Company v. United States, 36 C CPA 61, C.A.D. 398.

We have the uncontradicted testimony of DeJong, who had every incentive to acquire knowledge of the use of his merchandise in order to promote sales. His experience and transactions covered a large area of the United States which adds to the probity of his testimony.

█ While we are not unmindful of the presumption which attaches to the decision of the collector, nevertheless, a presumption is not evidence and is overcome by a small degree of competent proof.

█ An early case which lends itself to the claim of plaintiffs is Klipstein v. United States, 1 Ct.Cust.App., 122, T.D. 31120. It was there held that the testimony of one witness was sufficient to establish chief or exclusive use of an imported commodity. The court there said, in part—

"  *   *   *   The mere fact that the merchandise might *possibly* have some other use than that specified is not sufficient of and by itself to overcome or counterbalance the

probative effect of the sworn declaration of a single witness of ten years' experience with the goods that they have but one use because he knows of but one use for them. * * * Importers and merchants are naturally desirous of increasing the number of their customers and the demand for the goods in which they deal, and as they have every incentive for knowing the uses to which their wares are or may be put it is only fair to assume, at least *prima facie,* that the only uses known to them are the only uses of such wares. * * *" [Italics quoted.]

Another decision of our appellate court which has an important bearing here is reported in United States v. F. W. Woolworth Co., 23 CCPA 98, T.D. 47765, wherein it is stated—

"We are not unmindful of the rule that in order to establish "chief use" the evidence of use must relate to the United States generally, and not to a limited portion thereof. It may be proper to observe, however, that the question of whether "chief use" has been properly established depends upon the issues and the evidence in each case.

"We think it is a proper deduction from the evidence, and from the character of Exhibits 1, 2, and 3, that the involved articles would be used in substantially the same manner, and by substantially the same class of people, in one section of the country as in another, and that evidence establishing their chief use in a large area of the country is sufficient under the rule."

See also Kubie & Co. v. United States, 12 Ct.Cust.App. 468, T.D. 40668.

In its brief, the Government contends not only that there was failure on the part of plaintiffs to prove chief use of the rings throughout the United States, but further urges that, in any event, proof of chief use must relate to a period at or prior to the date of the current Tariff Act of June 1930 and cites as an authority the case of Dorf International, Ltd. v. United States, 40 Cust. Ct. 410, Abstract 61445.

In its reply brief, plaintiffs comment upon the Government's citation of the Dorf case, stating that: "where classification of merchandise under a particular paragraph is dependent upon chief use such use is to be determined as of the date of importation or immediately prior thereto," citing as their authority H. J. Baker & Bro. v. United States, 37 C CPA 52, C.A.D. 419.

The brief then refers to the case of W. J. Lake & Co., Inc., et al. v. United States, 27 CCPA 247, C.A.D. 94, from which the following is quoted:

"It is well established that where the statute provides that the thing designated shall be classified under a given provision only if chiefly used for a specified purpose, use must be determined as of the date of the importation of the particular merchandise involved, or immediately prior thereto, while the common or commercial meaning of an *eo nomine* designation in a tariff act must be determined as of the effective date of that act. Wilbur-Ellis Co. et al. v. United States, 18 CCPA 472, T.D. 44762, and cases therein cited."

It appears to us that the rules relating to the date of proof of chief use cited by both counsel were the rules which prevailed for many years. However, a recent decision of our appellate court, which will be cited, infra, appears to place a different construction on the rule governing classification in those cases where the statutory provision merely implies use. For a long period of time, this court and our appellate court have drawn a clear line of distinction in the type of proof required to establish chief use of imported merchandise. If a provision of the statute specifically mentioned the chief use of a commodity, then chief use at or immediately prior to importation was sufficient, but if the statute designated an article by a name which implied use, then chief use must

be established as of the date of the enactment of the statute.

Cases illustrating the first principle of chief use at the time of importation or immediately prior thereto are Pacific Guano & Fertilizer Co. et al. v. United States, 15 Ct.Cust.App. 218, T.D. 42240, Wilbur-Ellis Co. et al. v. United States, 18 CCPA 472, T.D. 44762, W. J. Lake & Co., Inc., et al. v. United States, supra, and H. J. Baker & Bro. v. United States, supra, and cases therein cited.

Representing the second principle of chief use at or immediately prior to the enactment of the statute are the cases of United States v. Belgam Corp. et al., 22 CCPA 402, T.D. 47402, United States v. F. W. Myers & Co., Inc., 24 CCPA 464, T.D. 48913, and United States v. C. J. Tower & Sons, 26 CCPA 1, T.D. 49534, and cases therein cited.

In a recent decision, our appellate court, in United States v. The Baltimore & Ohio R. R. Co., 47 CCPA 1, C.A.D. 719, has in effect repudiated the long-standing rule referred to above as the second principle of chief use.

■ The tariff term with which the court was concerned in the Baltimore case was "tableware," a word which merely implied use, proof of which, in accordance with the principles above stated, should be related to the date of the enactment of the statute. However, the court, in no uncertain terms, expressed itself as follows:

> "We believe that where, as here, classification is to be determined on the basis of chief use, that determination should be made at the time of importation, *whether or not* the tariff provision in question explicitly requires classification by chief use." [Italics supplied.]

We have examined the briefs which were before the court in the Baltimore case and note that counsel brought to the attention of the court some of the leading authorities which discuss the rule of chief use. In fact, the appellate court, in its opinion, specifically referred to the Wilbur-Ellis and H. J. Baker & Bro. cases, where chief use at the time of importation was emphasized.

Much might be said in favor of the rule announced in the Baltimore case which would allow proof of chief use at the time of importation in all cases. Doubtless, it would greatly facilitate the administration of chief use provisions by customs officials and simplify the introduction of proof in the trial of cases in the courts. The present tariff act is now 30 years old and, in many instances, it is extremely difficult to prove chief use at or prior to the date of its enactment —June 1930.

■ Applying the Baltimore rule to the case at bar, we hold that chief use of the curtain rings in controversy at and immediately prior to the date of importation was as household utensils.

Upon the record and for the reasons given above, we sustain plaintiffs' claim for classification of the subject merchandise in said paragraph 339, as modified, supra, as household utensils, not specially provided for, composed wholly or in chief value of brass, which is made dutiable at the rate of 15 per centum ad valorem.

Judgment will issue accordingly.

FORD, Judge (dissenting).

The determination by the majority that the involved brass pole rings are properly dutiable at 15 per centum ad valorem under the provisions of paragraph 339 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas.Dec. 305, T. D. 51802, and T.D. 51909, would appear to be based primarily upon their interpretation of the recent decision of our appellate court in United States v. The Baltimore & Ohio R. R. Co. a/c United China & Glass Company, 47 CCPA 1, C.A.D. 719. The appellate court, in that case, made the following observation:

> "We believe that where, as here, classification is to be determined on the basis of chief use, that determination should be made at the time of importation, whether or not the tar-

iff provision in question explicitly requires classification by chief use."

From this paragraph, the majority are apparently of the opinion that our appellate court has repudiated the principle of law that where the statute mentions an article by a name which implies use, then chief use must be established as of the date of the enactment of the tariff act. It should be noted that the appellate court, in The Baltimore & Ohio R. R. Co. case, supra, before making the above-quoted statement, first cited the case of United States v. C. J. Tower & Sons, 26 CCPA 1, T.D. 49534, as standing for that principle of law which requires that the meaning of an *eo nomine* designation be determined as of the date of the enactment of the tariff act. However, the Tower case, supra, also stands for the basic proposition that the determination of chief use on or about the date of the enactment of the tariff act is required for the classification of an article designated by a use provision. See also Goldsmith's Sons v. United States, 13 Ct.Cust.App. 69, T.D. 40932. The court further cited the case of H. J. Baker & Bro. v. United States, 37 CCPA 52, C.A.D. 419, and the principle of law that where the statute expressly makes an article's classification dependent upon chief use, the chief use on or about the date of importation controls. The court then cited the case of Wilbur-Ellis Co. et al. v. United States, 18 CCPA 472, T.D. 44762, and quoted the following from page 479:

" * * * if there be an *eo nomine* designation, the common meaning thereof must be determined as of the date of the enactment of the tariff act, but if it is further provided that the thing designated shall be classified under a given provision only if chiefly used for a specified purpose, the question of use should be determined, *not as of the effective date of the tariff act but as of the date of the importation of the particular merchandise involved or immediately prior thereto."* (Emphasis ours.) [Italics quoted.]

While the portion of The Baltimore & Ohio R. R. Co. case, supra, relied on by the majority, may be subject to the interpretation placed upon it by my colleagues, I am of the opinion that the citation of the cases relating to chief use by our appellate court and the record made therein which will be discussed, infra, do not amount to a repudiation of long-established law on the subject of chief use. The review of the record by the court, in its decision in The Baltimore & Ohio R. R. Co. case, supra, is indicative of the fact that the after-dinner cups and saucers involved therein, although denominated as such, were, in fact, not the same articles of commerce as after-dinner cups and saucers used for drinking coffee. The record, as digested, seems to clearly indicate that 6 or 7 years prior to 1954, the importer found an excessive demand for these items, while there had been no material change in the demand for the after-dinner cups and saucers that matched dinner sets. In addition thereto, the method of packing six different shapes with three different decorations and the fact that they were cheaply decorated and would not endure washings, all led the court to conclude that the items under consideration were not the same as the tableware after-dinner cups and saucers. These factors also clearly established that the items were a new article of commerce which developed as a fad and were used for display purposes.

The law is well settled that where an article of commerce comes into existence subsequent to the enactment of a tariff act and a tariff provision does not contain special language, such as, chiefly used for, the determination of chief use is controlled by the use of said article on or about the date of importation. United States v. Paul G. Downing et al., 1929, 16 Ct.Cust.App. 556, T.D. 42394; United States v. Geo. Wm. Rueff, Inc., 41 CCPA 95, C.A.D. 535. I agree with the basic principles of law relative to the determination of chief use, as cited by the court in The Baltimore & Ohio R. R. Co. case, supra, and the additional cases cited

herein, as well as with respect to the law relative to new articles of commerce. The statement relied upon by the majority does not appear to be controlling of the decision in The Baltimore & Ohio R. R. Co. case, supra, since it is clear, as indicated, supra, that the after-dinner cups and saucers involved therein were new articles of commerce, which, ordinarily, under the law as it presently stands, require evidence of chief use on or about the date of importation and not on or about the date of the enactment of the tariff act. This is the law with respect to the time controlling chief use when an *eo nomine* provision implying use is involved, and it has been so construed for at least 35 years, as indicated in the Goldsmith case, supra. I do not feel that the court, in The Baltimore & Ohio R. R. Co. case, supra, intended to change the law generally with respect to the controlling time of chief use, but merely applied it to that case, since it involved a new article of commerce.

In addition to the question of the controlling time of chief use, another problem presents itself in this case. It is incumbent upon plaintiffs herein to establish that the imported merchandise was chiefly used as a household utensil throughout the United States. Local or partial use is insufficient. Pacific Guano & Fertilizer Co. et al. v. United States, 15 Ct.Cust.App. 218, T.D. 42240.

In the case at bar, the only witness called testified that he had personally observed the use of merchandise such as the imported articles in New York, Chicago, Philadelphia, Boston, and in the homes of many of his friends. In the absence of testimony which would establish that New York, Chicago, Philadelphia, and Boston are the principal markets in which the imported articles are used, the court may not assume or presume their use would be the same throughout the United States. The latter principle, as enunciated in the case of United States v. F. W. Woolworth Co., 23 CCPA 98, T.D. 47765, cited by the majority, requires such evidence "in a large area of the country." I do not feel use in four cities represents a large area of the country. I am not unmindful of the fact that the witness testified that his company sold such merchandise throughout the United States. However, he testified, on cross-examination, that he did not have personal knowledge of the ultimate use of the merchandise, other than that which he had seen so used. A case with quite a similar record was decided adversely to the party asserting a classification requiring chief use. California Wool Growers Assn. and Frank P. Dow Co., Inc. v. United States, 34 Cust.Ct. 295, Abstract 58797. In that case, the witness also testified that he had sold the merchandise throughout the United States, but indicated that he had not followed up its use or seen it used other than in California.

In view of the statement by the witness on cross-examination, I do not feel that the case of Klipstein v. United States, 1 Ct.Cust.App. 122, T.D. 31120, relied upon by the majority, is controlling herein, although I agree with the principles in the Klipstein case, supra, that, in some instances, one witness may be sufficient to establish chief use of an imported commodity, and that an importer or merchant has every incentive for knowing the uses to which his wares are put. However, as indicated, supra, the evidence herein does not warrant such a conclusion nor establish chief use.

Following the above-cited cases, I am of the opinion that the record herein has not satisfactorily established chief use, either with respect to the time controlling or the geographical representation. I would, therefore, overrule the protest.