(C.D. 2238)

C. H. POWELL CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 21, 1961)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; FORD, J., concurring

LAWRENCE, Judge: The merchandise which is the subject of the three protests enumerated in the schedule attached to and made part of this decision consists of welt cutters and parts thereof which are identified on the commercial invoices accompanying the entries as model number 148, 149, or 150, together with various letters, such as BD, BA, BC, or RBC.

The welt cutters were classified as machines, finished or unfinished, not specially provided for, in paragraph 372 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 372), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and assessed with duty at the rate of 13¾ per centum ad valorem.

Certain knives for said welt cutters were classified by the collector as knives used in power or hand machines within the purview of paragraph 356 of said act (19 U.S.C. § 1001, par. 356), as modified, *supra*, supplemented by Presidential notification, 86 Treas. Dec. 337, T.D. 52820, and subjected to duty at the rate of 10 per centum ad valorem.

It is contended by plaintiff that the welt cutters and the knives therefor should properly be classified in paragraph 1643 of the Tariff Act of 1930 (19 U.S.C. § 1201, par. 1643), which provides for free entry of shoe machinery, whether in whole or in part, including repair parts.

The competing provisions of the statutes are here set forth—
Paragraph 372, as modified, *supra*:

Machines, finished or unfinished, not specially provided for:
    Calculating machines specially constructed for multiplying
      and dividing_____ \* \* \*

   \*     \*     \*     \*     \*     \*     \*
  Other \* \* \*_____13¾% ad val.

Paragraph 356, as modified and supplemented, *supra*:

Planing-machine knives, * * * and all other cutting knives and blades used in power or hand machines (not including any stock-treating parts, other than mill knives, for pulp or paper machinery) _____ 10% ad val.

Pargraph 1643 of the Tariff Act of 1930, *supra*:

Linotype and all typesetting machines, shoe machinery, * * * all the foregoing whether in whole or in part, including repair parts. [Free list.]

The record upon which this case was submitted for decision consists of the testimony of one witness, Clarence Roeder, who appeared on behalf of the plaintiff. Roeder is vice president in charge of sales of Herman Schwabe, Inc., ultimate consignee of the instant merchandise and a manufacturer of machines for the shoe industry for approximately 25 years. The witness had been in the shoe business and shoe machinery business since 1921 and had done considerable selling and servicing of shoe machinery. In addition to traveling throughout the United States picking up new ideas, he had made a survey during 1952 and 1953 of all of the available shoe machinery produced in Europe by the principal firms abroad. He stated he was familiar with the details, the construction, and the operation of all types of machinery used in making shoes, and with the welt cutters presently in issue, stating that the instant machines differ only in the matter of width. Model 149BD is 14 inches, model 148BA is 6 inches, and model 150 RBC is a 4-inch width machine.

As illustrative exhibit 1, there was received in evidence page 1 of a pamphlet issued in the name of Herman Schwabe, Inc., illustrating the various types of cutters before the court.

Roeder explained that a welt cutter is used to slit leather into strips of desired width, the width being determined by the setting of the knives on the machine either one-eighth, one-fourth, or one-half inch apart. The resultant strips of leather are called welting, of which plaintiff's exhibit 2 is illustrative. The cutting knives referred to are circular and are placed on a shaft one-half inch in diameter and are separated by spacers that go between the knives in order to establish the widths desired to be maintained on the shaft. Model 149 on plaintiff's illustrative exhibit 1 shows 15 knives, model 148, 5 knives, and model 150, 4 knives. Additional knives can be placed on the various models in order to produce different width welting.

Four shoes were received in evidence as follows—

Plaintiff's illustrative exhibit 3 represents the use of welting on a shoe produced by a "Goodyear welt construction" process.

Plaintiff's illustrative exhibit 4 demonstrates how a welt is used in connection with a stitch-down construction shoe.

Plaintiff's illustrative exhibit 5 represents another type of construction known as an American or mid-sole welt. In connection with this

construction, the welting is called stripping or binding, for the reason the edge of the sole is bound for appearance purposes.

Plaintiff's illustrative exhibit 6 demonstrates the use of such stripping or binding on a woman's sandal.

Roeder stated that welts are rarely used on women's shoes any more and that 95 per centum of women's shoes produced today employ adhesive cement attachment of the sole. The witness, referring to exhibits 3, 4, 5, and 6, stated that of a total annual shoe production in the United States, consisting of approximately 587 million pairs, the Goodyear welt process was used on 109 million pairs and the stitch-down process was used on approximately 60 million pairs, and that a great majority were cement process shoes, which process has become the predominant type of production in this country.

Roeder testified that the instant welt cutters were designed specifically for the making of welts for shoes but that, like many other shoe machines, it can be used for other purposes, such as in the belt industry and for the manufacture of pocketbooks. The witness testified that he has seen shoes being made by the welt construction process since 1922, and stated that, in his experience, a welt cutting machine is essential for the production of welt construction shoes.

Welting, in many cases, is produced in separate plants, in large shoe companies having their own welt factories where the welt cutting machines would be used, whereas a small plant which produces 3 or 4 thousand pairs of shoes a day would cut its own welting on a welt cutting machine. It was the witness' opinion, based on his experience, that the instant welt cutters are shoe machinery designed primarily and originally for the shoe industry.

After a hide has been cut into length of welting by a welt cutting machine, the leather strips are processed on another machine that "doubles the edge" after which the stripping is cemented and the two ends are joined or pressed together until the cement solvent dissipates. With reference to plaintiff's exhibit 2, the witness stated that in order for welt stripping to be joined to the inseam of the insole of a shoe, the edge of the strip is beveled and grooved. Not only does it provide a place for the subsequent stitching, but it makes the welt more flexible.

When asked if a Sorensen welt cutting machine is similar to a clicking machine, witness Roeder replied that a clicking machine cuts out with a die individual pieces of leather for use in the upper part of a shoe, whereas the Sorensen machine is a continuous cutting machine using circular knives which revolve at high speed. Whereas the Sorensen welt cutting machine and the clicking machine both cut leather, the clicking machine, though originally designed for the shoe business, is now used as well in other industries.

The witness testified that through his business experience he knew as a fact that, in 1930 and prior thereto, machines such as the instant

Sorensen machines were used in many other leather manufacturing industries besides that of welt cutting. He also knew from his experience that machines like the instant importation were used in the construction of welt shoes prior to 1930 and were extensively used in the shoe manufacturing business. In the construction of a shoe, a welt is necessary, and throughout his entire experience welt cutters have been a necessary part of the equipment of a well-organized shoe factory either in the plant itself where the shoes are made or in a plant which provides the shoe industry with welt stripping.

When asked what percentage of welt cutters were used in the manufacture of shoes compared with the use of welt cutters for other purposes, Roeder replied "I think that through the years the welt cutter has gradually become used as much outside the shoe industry as in the shoe industry."

Various cases have been cited by the opposing parties. Plaintiff makes reference to the following:

*Draeger Shipping Co.* v. *United States*, 56 Treas. Dec. 818, Abstract 9716, wherein clicking machines, classified and assessed with duty as machines in paragraph 372 of the Tariff Act of 1922, were held to be free of duty as shoe machinery in paragraph 1542 of said act. It appeared that the articles in issue were particularly adapted for cutting or clicking out pieces of leather shaped for shoes.

*Fortuna Machine Co.* v. *United States*, 56 Treas. Dec. 935, Abstract 10377, relating to knives which were classified as such in paragraph 356 of the Tariff Act of 1922 and accordingly assessed with duty were held to be entitled to free entry as parts of shoe machinery in paragraph 1542 of said act. It was conceded in that case that the imported articles were skiving knives employed in the manufacture of shoes, and it was held that the provision for shoe machinery is restricted to a certain class of articles chiefly, if not exclusively, employed in a particular industry, to wit, shoe manufacturing, and that it is a more specific provision than the general provision for "all other cutting knives used in hand or power machines."

*Pfaff Industrial Sewing Machine Corp. and Intra Mar Transport Corp.* v. *United States*, 38 Cust. Ct. 470, Abstract 60643, in which case certain machines, classified as sewing machines in paragraph 372 of the Tariff Act of 1930, as modified, were held properly entitled to entry free of duty in paragraph 1643 of said act for shoe machinery and parts thereof. That case was decided on a stipulation of fact by the interested parties to the effect that the merchandise in question consisted of machinery and parts thereof used chiefly for the manufacture of shoes.

The cases to which reference is made by the defendant are the following:

*Carpenter Shoe Co., Inc.* v. *United States*, 64 Treas; Dec. 759, Abstract 24577, wherein electric heating pads and motor, classified as electrical articles in paragraph 353 of the Tariff Act of 1930 and, accordingly, subjected to duty, were held to be duty free as parts of shoe machinery in paragraph 1643 of said act. The decision in that case rested upon a record which showed that the electric heating pads and motor were indispensable and integral parts of machines used to rapidly dry the cement by which soles of shoes were attached to the uppers, and that neither the heating pads nor the motor could be used except in connection with such machines.

*Louis G. Freeman Co.* v. *United States*, 58 Treas. Dec. 1060, Abstract 13580, which involved machines described as "leather-splitting machines with band knife," which were classified and assessed with duty within the machine provision in paragraph 372 of the Tariff Act of 1922 and were deprived of the benefit of free entry as shoe machinery in paragraph 1542 of said act. Whereas the evidence in that case disclosed that the machine in issue was used in a shoe factory, it also appeared that the mechanism in issue was exclusively a leather-splitting machine and could be used in any other factory where splitting leather was needed for any purpose other than the manufacture of shoes. The evidence in that case was held insufficient to sustain the claim of plaintiff.

*United States* v. *Laing Harrar & Chamberlin*, 21 C.C.P.A. (Customs) 235, T.D. 46763, wherein the collector's classification of certain shoe-treeing or shoe-stretching devices as machines, not specially provided for, in paragraph 372 of the Tariff Act of 1930 with appropriate duty assessment was sustained, rather than the claim of plaintiff for duty-free entry of the merchandise as shoe machinery in paragraph 1643 of the 1930 tariff act, it being the opinion of the court that the devices there in controversy were not used in a manufacturing operation upon shoes.

*P. H. Petry Co.* v. *United States*, 40 Cust. Ct. 443, Abstract 61541, involved a Linham pattern grading machine, which was classified by the collector of customs within the electrical articles provision of paragraph 353 of the Tariff Act of 1930, as modified, assessed with duty accordingly, and held by this court to be shoe machinery, entitled to entry free of duty within the provisions of paragraph 1643 of said act. It was the view of this court that the uncontradicted evidence there presented clearly established that the involved machine was used in manufacturing shoes.

All of the cases cited by the parties lead to the conclusion that for a mechanism or device to come within the provision for shoe machinery in paragraph 1643 of the Tariff Act of 1930, it must be chiefly used in a manufacturing operation on shoes.

The provision for "shoe machinery" in paragraph 1643 of the Tariff Act of 1930, under which relief is here being sought, is a statutory provision which by its language implies use. A recent decision of our appellate court, *United States* v. *The Baltimore & Ohio R.R. Co. a/c United China & Glass Company*, 47 C.C.P.A. (Customs) 1, C.A.D. 719, has made chief use at or immediately prior to importation the controlling consideration in instances where use is involved.

Although it appears in the record presently before the court that a welt cutting machine does perform a manufacturing operation upon shoes which are made by a welt construction process, the record precludes a finding that such use was its chief use at or about the time of importation. Such a view is amply supported by the testimony of the sole witness in the case, which was referred to above and is here repeated, wherein, in answer to a question as to the extent of the use of welt cutters in the manufacture of shoes as compared with their use for other purposes, he stated "I think that through the years the welt cutter has gradually become used as much outside the shoe industry as in the shoe industry."

In the absence of convincing evidence that the Sorensen welt cutting machines and knives therefor were at or about the date of importation thereof chiefly used in a manufacturing operation upon shoes, we have no other alternative but to overrule the claim of plaintiff and to affirm the decision of the collector.

Judgment will issue accordingly.

### CONCURRING OPINION

FORD, Judge: Based upon the record herein, I concur in the conclusion arrived at by the majority opinion. However, for the reasons set forth in my dissenting opinion in *Kroder Reubel Co., Inc.*, and *Alltransport, Inc.* v. *United States*, 44 Cust. Ct. 274, C.D. 2186, I can not subscribe to the rationale supporting the majority opinion.