(C.D. 2395)

J. C. De Jong & Co. Inc. *v.* United States

## United States Customs Court, Second Division

(Decided April 24, 1963)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* and *Earl R. Lidstrom* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Alfred A. Taylor, Jr.,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: An importation of articles, known interchangeably as pole ends, end knobs, or finials, was classified by the collector of customs as articles in chief value of brass, not specially provided for, in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and duty was imposed thereon at the rate of 19 per centum ad valorem. The copper tax assessment pursuant to section 4541 of the Internal Revenue Code (26 U.S.C. § 4541) is not in issue.

Plaintiff claims that said merchandise should be classified as household utensils, not specially provided for, in chief value of brass, in paragraph 339 of said act (19 U.S.C. § 1001, par. 339), as modified by the sixth protocol, *supra,* and dutiable at the rate of 12½ per centum ad valorem.

The pertinent text of the competing statutes is here set forth.

Paragraph 397 of the Tariff Act of 1930, as modified, *supra:*

Articles or wares not specially provided for, whether partly or wholly manufactured:

    \*       \*       \*       \*       \*       \*       \*

    Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

  \*       \*       \*       \*       \*       \*       \*

    Not wholly or in chief value of tin or tin plate:
      Carriages, drays, \* \* \*

  \*       \*       \*       \*       \*       \*       \*

      Other, composed wholly or in chief value of \* \* \* brass
      \* \* \* _____ 19% ad val.

Paragraph 339 of said act, as modified, *supra:*

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for, whether or not containing electrical heating·elements as constituent parts:

    \*       \*       \*       \*       \*       \*       \*

Not plated with platinum, gold, or silver, and not specially provided for, composed wholly or in chief value of—

Brass_____ 12½% ad val.

The following exhibits were introduced at the trial:

Plaintiff's exhibit 1—a pole end representing the 1-inch size.

Plaintiff's exhibit 2—a pole end representing the ½-inch size.

Plaintiff's collective illustrative exhibit 3—consists of a curtain rod, curtain pole rings, bracket, and pole ends, together with a curtain or drapery. The composite article illustrates an actual use of the pole ends.

It was stipulated by adversary counsel that the imported commodity is chiefly used in the household.

It remains to be determined, therefore, whether the articles above described, represented by plaintiff's exhibits 1 and 2, are household utensils within the meaning of that term, as it is used in said paragraph 339.

The only witness in the case was Jacques De Jong who, since 1956, had been president of the plaintiff company, whose business was that of importer and wholesaler of interior decorators' and builders' hardware. Prior to 1956, De Jong was employed by Kroder Reubel Co., Inc., manufacturer of drapery hardware.

Based upon his experience and familiarity with the nature, character, and use of articles such as exhibits 1 and 2, De Jong stated—

On a curtain rod a pole end is needed for two reasons: First, to prevent that the last ring will fall off when the curtains are open; secondly, to prevent dampness and humidity and dirt to come into the room [sic], and thus preventing corrosion and rust.

The witness then demonstrated in more detail how the various exhibits would be put to practical use. A curtain, to which curtain hooks were fastened, was attached to the curtain rod by placing the hooks through the eyes of the pole rings. The witness explained that while there are many different ways of hanging a curtain rod to the wall, in this particular case, a bracket is attached to the wall, and between the bracket and the pole end a ring would be placed, the purpose of the pole end being to prevent the curtain from sliding off the end of the pole.

In support of its claim for classification of the imported pole ends as household utensils in paragraph 339 of the tariff act, as modified, *supra*, plaintiff, in its brief, relies primarily on the decision of this court in *Kroder Reubel Co., Inc.*, and *Alltransport, Inc.* v. *United States*, 44 Cust. Ct. 274, C.D. 2186, 185 F. Supp. 515. We there said—

The term "household utensils," as it appears in the statute above quoted, has been judicially defined as relating to articles which serve a utilitarian purpose and are chiefly used in the household for the care and maintenance of

the home and for the convenience and comfort of its members. *Pramette Juvenile Furniture Company* v. *United States*, 36 C.C.P.A. (Customs) 61, C.A.D. 398.

It appears from the opinion in the *Kroder Reubel* case that pole rings, invoiced as three-quarters of an inch, 1 inch, 1½ inches, and 2 inches in size, similar to those forming part of plaintiff's exhibit 3 in this case, were used by sliding them over curtain rods and attaching thereto curtains or draperies on hooks to facilitate their free movement. On the record there presented, the court held the pole rings to be household utensils in paragraph 339 of the Tariff Act of 1930, as claimed.

While the parties have agreed that the pole ends in the present controversy are chiefly used in the household, it is for the court to determine on the record before it whether said articles are, in fact and in law, household utensils within the meaning of the statute.

From the testimony of witness De Jong, it has been shown with the use of plaintiff's exhibit 3 that a curtain pole is attached to a window framework by brackets, with a pole ring placed between the bracket and the pole end. The pole end prevents the last pole ring, as well as the curtain or drapery, from dropping off the rod when the curtain or drapery attached thereto is opened. In such a use of the imported commodity, and it may be used on any curtain pole of the proper diameter, it is our opinion that the pole end serves primarily a utilitarian purpose. The fact that it may also provide a decorative appearance would not necessarily deprive it of its utilitarian character as a household utensil.

However, the defendant urges that the pole ends are not household utensils within the common meaning of that term, citing the case of *Frank P. Dow Co., Inc.* v. *United States*, 21 CCPA 282, T.D. 46816, wherein it was held that certain electric vacuum cleaners and floor polishers were household utensils.

The court, in said case, was of the opinion that the terms " 'utensil,' 'instrument,' and 'implement' may be, and frequently are, used interchangeably." We here set forth the definitions of those terms, which were quoted by the court in that case:

*Utensil, n.* An instrument or vessel, esp. one used in a kitchen or dairy. (Webster's New International Dictionary.)

*Utensil, n.* Something that is used; a thing serving a useful purpose; formerly, a thing of varied use; as, *utensils* of war or observation; now, more especially, an implement or vessel for domestic or farming use; as kitchen *utensils*. (Funk & Wagnall's New Standard Dictionary.)

*Utensil, n.* An instrument or implement: as, *utensils* of war; now, more especially, an instrument or vessel in common use in a kitchen, dairy, or the like, as distinguished from agricultural *implements* and mechanical *tools*. (Century Dictionary & Cyclopedia.)

*Instrument, n. 2.* A material thing or mechanical device for performing work or producing an effect; tool; utensil; implement; as, a mechanic's *instruments;* astronomical *instruments.* (Webster's New International Dictionary.)

*Implement, n. 1.* That which fulfills or supplies a want or use; esp., an instrument, tool, or utensil used by man to accomplish a given work; as, the *implements* of trade, of husbandry, or of war. (Webster's New International Dictionary.)

*Instrument, n. 1.* A means by which work is done; an implement or tool, especially an implement or mechanism for scientific or professional purposes, as distinguished from a device, tool, or machine for industrial use; figuratively, any means of accomplishment; as, the hands are *instruments* of the will.

*Implement, n. 1.* An instrument used in work, especially manual work; a tool or a utensil; as, the *implements* of husbandry; the *implements* of warfare. (Funk & Wagnall's New Standard Dictionary.)

It seems clear from the definitions above quoted that pole ends, such as exhibits 1 and 2, are not utensils or implements within the foregoing definitions. It has been shown by the record before us that the pole ends, in addition to preventing the drapery or curtain from falling off the curtain pole, also serve to prevent moisture and dirt from settling in the inside of the curtain poles thereby causing corrosion and rust. If we assume, for the sake of argument only, that a curtain rod is a household utensil, it would seem to follow in the instant case that the pole ends would constitute parts thereof, within the concept of the familiar case of *United States* v. *Willoughby Camera Stores, Inc.*, 21 CCPA 322, T.D. 46851, wherein the following appears:

* * * that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article.* [Citing cases.] [Italics quoted.]

In such instances where pole ends are used with curtain poles for suspending therefrom curtains affixed to pole rings, said pole ends are integral, constituent, and component parts of the curtain pole with which they are joined, and said pole could not serve its function without the use of the pole ends.

The question of whether or not curtain poles, similar to the pole forming part of plaintiff's exhibit 3, are household utensils in themselves is not before us, and that issue will be decided when it is properly presented. But even were we to assume, *arguendo*, that curtain poles were within the tariff concept of household utensils and the instant pole ends were parts thereof, said pole ends could not find classification as such, inasmuch as there is no provision in paragraph 339 of the tariff act for "parts" of the articles therein provided for. See *United States* v. *J. E. Bernard & Company, Inc.*, 42 CCPA 141, C.A.D. 586.

We are not unmindful of the fact that curtain rods of the type shown in plaintiff's exhibit 3 with rings attached thereto may be

affixed inside the framework of a window, in which event, it would be unnecessary to use pole ends, such as exhibits 1 and 2, but said fact does not deter us from the conclusion herein reached.

Upon the record before us, we find and hold that the pole ends in issue are not in themselves household utensils, within the purview of paragraph 339 of the Tariff Act of 1930, as modified, as claimed by plaintiff, and the classification of said merchandise by the collector of customs as articles in chief value of brass, not specially provided for, in paragraph 397 of the Tariff Act of 1930, as modified, *supra*, is affirmed. *Kroder Reubel Co., Inc.*, and *Alltransport, Inc.* v. *United States*, 44 Cust. Ct. 274, C.D. 2186, 185 F. Supp. 515, distinguished.

Judgment will issue accordingly.