J. C. DeJong & Co., Inc. v. United States (No. 5150)*

United States Court of Customs and Patent Appeals, February 18, 1965

*Barnes, Richardson & Colburn* (*E. Thomas Honey*, of counsel) for appellant. *John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Alfred A. Taylor, Jr.*, for the United States.

*C.A.D. 852.

[Oral argument November 2, 1964, by Mr. Honey and Mr. Vance]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr., Associate Judges

WORLEY, Chief Judge, delivered the opinion of the court:

■ The imported articles are pole ends, used on the ends of curtain rods or poles. They were classified as articles of brass, not specially provided for, under paragraph 397 of the Tariff Act of 1930, as modified by the sixth Protocol of Supplementary Concessions to GATT, T.D. 54108, which in pertinent part reads:

> Articles or wares not specially provided for, whether partly or wholly manufactured:
>
>    \*      \*      \*      \*      \*      \*      \*
>
> Composed wholly or in chief value of \* \* \* brass, \* \* \* but not plated with platinum, gold, or silver, or colored with gold lacquer:   \* \* \*
>
>     Other, composed wholly or in chief value of \* \* \* brass, \* \* \* _19% ad val.

Appellant contends here, as before the Customs Court, that the pole ends should be classified as householld utensils, not specially provided for, in chief value of brass, under paragraph 339 of the Tariff Act, as modified by the Sixth Protocol, which reads:

> Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for, whether or not containing electrical heating elements as constituent parts:
>
>    \*      \*      \*      \*      \*      \*      \*
>
> Not plated with platinum, gold, or silver, and not specially provided for, composed wholly or in chief value of—
>
>     Brass _____ 12½% ad val.

The evidence before the trial court includes the testimony of one witness for appellant and a stipulation of counsel that the pole ends are chiefly used in the household. Appellant's exhibits consist of pole ends of 1-inch and ½-inch size, and a collective exhibit consisting of a curtain rod, curtain pole rings, bracket, and pole ends together with a curtain or drapery.

The witness testified regarding the use of the pole ends:

> On a curtain rod a pole end is needed for two reasons: First, to prevent that the last ring will fall off when the curtains are open; secondly, to prevent dampness and humidity and dirt to come into the room [rod], and thus preventing corrosion and rust.

The court observed that

> The witness then demonstrated in more detail how the various exhibits would be put to practical use. A curtain, to which curtain hooks were fastened, was attached to the curtain rod by placing the hooks through the eyes of the pole rings. The witness explained that while there are many different ways of hanging a curtain rod to the wall, in this particular case, a bracket is attached to the wall, and between the bracket and the pole end a ring would be placed, the

*purpose of the pole end being to prevent the curtain from sliding off the end of the pole.*

The court was of the opinion the pole ends serve "primarily a utilitarian purpose," and that their decorative appearance would not necessarily deprive them of their utilitarian character.

The court found the issue to turn on whether the pole ends are utensils, it being stipulated, as previously noted, that they are chiefly used in the household.

In resolving that question, the court took particular note of *Frank P. Dow Co., Inc.* v. *United States*, 21 CCPA 282, T.D. 46816, which held that certain electric vacuum cleaners and floor polishers were household utensils. There it was stated that the terms " 'utensil,' 'instrument' and 'implement' may be, and frequently are, used interchangeably." The following definitions of those terms were quoted from Dow:

*Utensil, n.* An instrument or vessel, esp. one used in a kitchen or dairy. (Webster's New International Dictionary.)

*Utensil, n.* Something that is used; a thing serving a useful purpose; formerly, a thing of varied use; as, *utensils* of war or observation; now, more especially, an implement or vessel for domestic or farming use; as kitchen *utensils.* (Funk & Wagnalls' New Standard Dictionary.)

*Utensil, n.* An instrument or implement; as *utensils* of war; now, more especially, an instrument or vessel in common use in a kitchen, dairy, or the like, as distinguished from agricultural *implements* and mechanical *tools.* (Century Dictionary & Cyclopedia.)

*Instrument, n.* 2. A material thing or mechanical device for performing work or producing an effect; tool; utensil; implement; as, a mechanic's *instruments;* astronomical *instruments.* (Webster's New International Dictionary.)

*Implement, n.* 1. That which fulfills or supplies a want or use; esp., an instrument, tool, or utensil used by man to accomplish a given work; as, the *implements* of trade, of husbandry, or of war. (Webster's New International Dictionary.)

*Instrument, n.* 1. A means by which work is done; an implement or tool, especially an implement or mechanism for scientific or professional purposes, as distinguished from a device, tool, or machine for industrial use; figuratively, any means of accomplishment; as, the hands are *instruments* of the will.

*Implement, n.* 1. An instrument used in work, especially manual work; a tool or a utensil; as, the *implements* of husbandry; the *implements* of warfare. (Funk & Wagnalls' New Standard Dictionary.)

The court then concluded:

It seems clear from the definitions quoted above that pole ends, such as exhibits 1 and 2, are not utensils or implements within the foregoing definitions. * * *

We are unable to agree that the instant merchandise does not come within the broad scope of those definitions. One definition of utensil is "something that is used; a thing serving a useful purpose." Utensil is also defined as "an instrument or implement," while one definition of an implement is "That which fulfills or supplies a want or use." We

think such broad definitions would include the merchandise at bar. Cf. *Kroder Reubel Co., Inc. and Alltransport, Inc.* v. *United States*, 44 Cust. Ct. 274, C.D. 2186.

Appellant cites numerous decisions to support its position that the provision for household utensils has been broadly construed, among which is *F. W. Woolworth Co.* v. *United States*, 26 CCPA 221, C.A.D. 20, where it was held that small silver-finished metal animal figures to which short mechanical pencils were attached by a chain were dutiable as household utensils.

*Woolworth* was cited in *Pramette Juvenile Furniture Co.* v. *United States*, 36 CCPA 61, C.A.D. 398. Although children's strollers or gocarts were there held not to be household utensils, apparently because they were chiefly used on streets and beaches, it was there stated:

The words "household utensils" as used in paragraph 339, * * * , have been consistently construed by this court to refer to articles which serve a utilitarian purpose and are chiefly used in the household for the care and maintenance of the home for the convenience and comfort of its members.

Also relied on is *Davies, Turner & Company* v. *United States*, 47 CCPA 129, C.A.D. 744, where water mixers used to connect hot and cold water faucets to provide a single spray of water were held to be household utensils. The water mixers had no use except when so connected and were readily detachable.

The Government bases its argument to a large extent on the contention that the imported pole ends are primarily ornamental and not utilitarian in character. Indeed, it attempts to distinguish on that basis from the *Woolworth* and *Davies* cases, which it says related to articles which were utilitarian in their use and not ornamental, and also from the *Kroder Reubel* case. That contention, however, is directly contrary to the finding of the Customs Court that the pole end serves "primarily a utilitarian purpose." We find no basis in the record for holding that finding to be in error, nor for disagreeing with the conclusion of the court that the decorative appearance "would not necessarily deprive it of its utilitarian character as a household utensil."

In view of the stipulation that the pole ends are chiefly used in the household, the finding of the Customs Court that they serve primarily a utilitarian purpose, the dictionary definitions, and the broad construction prior decisions of this court have given paragraph 339, we are persuaded that the imported articles should be classified under that paragraph.

Since we find that the pole ends themselves are household utensils, it is unnecessary to review the Customs Court's consideration of them as parts of poles.

The judgment is *reversed*.

MARTIN, J., dissenting, with whom ALMOND, J. joins.

I agree that this case turns on the meaning of the term "utensil." While the majority opinion demonstrates that the case law points in the direction of a broad definition of the term "utensil," I think the opinion extends the definition beyond the common meaning of the term.

As this court stated in *I. W. Rice & Co.* v. *United States*, 24 CCPA 114, T.D. 48415, at p. 116: "The provision for 'household utensils' must, in the absence of commercial designation, be construed in accordance with its common meaning." In *Frank P. Dow Co., Inc.* v. *United States*, 21 CCPA 282, T.D. 46816, the court, after setting out various dictionary definitions, stated at p. 287: "* * * we are of [the] opinion that the involved articles [electric floor polishers and vacuum cleaners] clearly come within the common meaning of the term 'utensil'."

I think the common meaning of the term "utensil" connotes a tool function as well as a utility function in an article. The tool aspect to my mind is essential, while the decisions cited by the majority emphasize the utilitarian aspect in broadly applying the definitions to the articles with which they were concerned. An over-emphasis of the utilitarian aspect can lead to an unrealistic result, as this case shows. A chair is useful but it is hardly a tool or utensil; the same is true of a curtain pole end. The Customs Court found it "clear from the definitions [from the *Dow* case] * * * that pole ends * * * are not utensils or implements." The majority cites the same definitions from the *Dow* case to arrive at the opposite result. In the absence of clear error, I would let the judgment of the Customs Court stand.

There is no question in my mind that the decisions cited by the majority which apply a broad definition of the term "household utensil" to goods not specifically provided for elsewhere, do so consistently with the changes Congress made in the phrasing of paragraph 339 as reviewed in the *Dow* case.[1] A review of those cases also shows that while they emphasize the utilitarian aspect of the term they are consistent with an essential tool aspect rationale. While this rationale has not been clearly stated in those cases, the instant case, by taking one step beyond, finally demands it be articulated.

The *Dow* case, supra, held electric vacuum cleaners and floor polishers to be household utensils; clearly they have a tool aspect. The question in *Pramette Juvenile Furniture Co.* v. *United States*, 36 CCPA 61, C.A.D. 398, and *I.W. Rice & Co.*, supra, was not whether the

---

[1] It is to be noted that the review in *Dow* of the changes in statutory language was in connection with the scope of the term "household" on the question of whether the floor polishers were household articles, the vacuum cleaners concededly being household articles.

articles were utensils but whether they were chiefly used in the house-- hold. In *Rice*, atomizers were conceded to be utensils and were held to be chiefly used in the home, while in *Pramette* the baby strollers were chiefly used on streets and beaches, not the home. Whether the court in those cases also should have determined whether the articles before it were utensils, need not be discussed here. Appellee here, however, does not concede that brass curtain pole ends are utensils, and that is our only issue.[2]

If we are to follow the definition of the *Pramette* case quoted in the majority opinion, we must note that it contains two elements, a "utilitarian purpose," and also a qualification that the articles are to be used "for the care and maintenance of the home." Although the pole ends are stipulated to be chiefly used in the household, this alone does not compel the result under the *Pramette* definition, since only in a peripheral sense can the pole ends be said to aid one in "care and maintenance of the home." They are part of furnishings which themselves must be maintained.

The *Woolworth* case, in citing the *Rice* case as authority, on careful analysis seems to be primarily concerned with the chief use of the articles. The witnesses testified as to *where* the pencil holder was to be used. A second concern of that court was whether the utility of the pencil holder was sufficient to preclude its being termed only orna- mental. While the article in the *Woolworth* case is on the border of having a tool aspect, the presence of more than one question in issue in that case is such as to make the case no authority for a proposition counter to the rationale advanced by me here. Certainly the curtain pole end here has less of a tool aspect than the pencil holder of the *Woolworth* case.

A pair of cases which most clearly point out the rationale advanced by me is the *Davies* case, cited in the majority opinion, and *U. Fujita & Co.* v. *United States*, 26 CCPA 63, T.D. 49611. In *Davies* a water mixing device was held to come within the common meaning of the term "household utensil." In *Fujita*, door knockers were held not to be "household utensils" primarily because:

\* \* \* we are unable to accept the view that it was the purpose of the Congress to include within that paragraph articles designed to be, and, when in use, are, permanently attached to houses as fixtures, and, as such, a part of the realty.

While the *Fujita* case is tinged with aspects of whether there was use *in* the household, contrasting it with the *Davies* case shows the water mixer in *Davies* had a tool aspect, and was held to be a "household

---

[2] We are not here concerned with the doctrine of chief use, as applied in the *Dow* case (and the issue in the *Rice* and *Pramette* cases), to reinforce the conclusion in *Dow* with respect to chief household use of floor polishers, in guiding a choice between two para- graphs where the articles are not specifically provided for, since the brass curtain pole ends herein are stipulated to be chiefly used in the household.

utensil," while the door knocker of the *Fujita* case had none, and was held not to be a "household utensil."

The Customs Court commented that its earlier decision in *Kroder Reubel Co., Inc. and Alltransport, Inc.* v. *United States*, 44 Cust. Ct. 274, C.D. 2186, was "distinguished," but did not give the basis for its distinction. I am unable to reconcile the decision in that case with the principles I have advanced here, but recognize that the classification of curtain rings is not before this court.

What the majority decision does is to settle the law on the question of what is a utensil by reading—household article—in place of a "household utensil" in paragraph 339. All that is left and governing is the matter of chief use.

In this type of case the court should be guided by the common meaning of the word in issue. According to the dictionary definitions cited by the majority, it does not appear to me that the common meaning of "utensil," involving as an essential a tool aspect, includes the imported merchandise. I, therefore, would affirm the judgment of the Customs Court.